Filed:  September 22, 2011

IN THE SUPREME COURT OF THE STATE OF OREGON

STATE OF OREGON,

Petitioner on Review,

v.

ADAM MICHAEL CLOUTIER,

Respondent on Review.

(CC D085162T; CA A143051; SC S059039)

En Banc

On review from the Court of Appeals.*

Argued and submitted May 5, 2011.

Jeremy C. Rice, Assistant Attorney General, Salem, argued the cause for petitioner on review.  With him on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Erica Herb, Deputy Public Defender, Office of Public Defense Service, Salem, argued the cause for respondent on review.  With her on the brief was Peter Gartlan, Chief Defender.

LANDAU, J.

The order of the Court of Appeals is reversed, and the case is remanded to the Court of Appeals for entry of an order dismissing the appeal.

*Appeal from Order Denying Reconsideration dated November 3, 2010, David V. Brewer, Chief Judge.

LANDAU, J.

The issue in this criminal case is one of appellate jurisdiction: May a defendant who has pleaded no contest to a misdemeanor offense appeal the judgment of conviction to challenge his sentence on the ground that it violates the Due Process Clause of the federal constitution? The Court of Appeals held that it had jurisdiction under ORS 138.050(1)(a), which provides that a defendant who has pleaded guilty may appeal after making a colorable showing that the sentence "[e]xceeds the maximum allowable by law." The state sought review, arguing that, because defendant's sentence is well within the maximum allowable by applicable statutes, the case should be dismissed. Defendant responds that, because the process by which the court arrived at his sentence was unconstitutional, that sentence "exceeds the maximum allowable by law" in the sense that any sentence arrived at by that process is unlawful. We conclude that the state is correct that this appeal is not cognizable under ORS 138.050 and therefore reverse and remand for entry of an order dismissing the appeal for lack of jurisdiction.

I. BACKGROUND

A.    *Facts*

Defendant was charged with driving under the influence of intoxicants (DUII). He pleaded no contest to one count of misdemeanor DUII and entered a DUII diversion program. When defendant failed to complete the program, the trial court terminated diversion, entered a judgment of conviction, and imposed a sentence, including a fine. ORS 813.255. The mandatory minimum fine for misdemeanor DUII is $1,000. ORS 813.010(6)(a). The maximum fine for a Class A misdemeanor, including

1

misdemeanor DUII, is $6,250. ORS 161.635(1)(a). In this case, the trial court imposed a fine in the amount of $1,100. When defendant asked why the court had imposed more than the mandatory minimum fine, the court explained that the $100 "was for his no contest plea at the time of entering the diversion."

Defendant appealed, challenging the lawfulness of the fine. He argued that, "[a]lthough the fine of $1,100 imposed in this case falls within [the] statutory range, the trial court abused its discretion because it imposed a fine greater than the statutory minimum simply because defendant exercised a statutory right" to plead no contest.

The state moved to dismiss defendant's appeal, asserting that the Court of Appeals lacks jurisdiction to review the case. The state argued that, under ORS 138.050, jurisdiction to review a sentence imposed after a defendant pleaded guilty is limited to cases in which the defendant has made a colorable showing that the sentence imposed either "exceeds the maximum allowable by law" or is unconstitutionally cruel and unusual. In this case, the state argued, defendant made no argument that the sentence was unconstitutionally cruel and unusual, and there can be no colorable claim that the sentence "exceeds the maximum allowable by law," because it is well below the statutory maximum for the offense.

Defendant asserted that the matter was appealable under ORS 138.050(1)(a) because the trial court failed to impose the sentence consistently with statutory sentencing requirements, given that the court, in effect, punished him for exercising his statutory right to plead no contest. That error, he argued, caused the sentence to exceed the maximum allowable by law.

2

The Appellate Commissioner granted the state's motion, agreeing that the court lacked jurisdiction. The commissioner explained:

"[Defendant] does not assert that his sentence was unconstitutionally cruel and unusual, but he argues that the trial court abused its discretion when it imposed a fine greater than the statutory minimum and therefore the sentence was not 'imposed consistently with the statutory requirements.' *State v. Stubbs*, 193 Or App 595, 606-07, 91 P3d 774 (2004). The fine imposed falls well within the statutory limit. If the trial court took into consideration that [defendant] pleaded no contest in establishing the amount of the fine, that may raise a constitutional issue, *State v. Qualey*, 138 Or App 74, 76-77, 906 P2d 835 (1999) (under state and federal constitutional right to jury trial provisions, judge may not base sentence in part on defendant's exercise of that right). However, no statute bars the trial court from doing so. It follows that the court lacks jurisdiction to review the amount of the fine."

Defendant then moved for reconsideration, arguing that, in fact, he did intend to assert that the trial court's imposition of the additional fine for exercising his right to plead no contest raised a constitutional issue. Specifically, he asserted that the trial court's imposition of the fine for exercising that right violated his right to due process guaranteed under the federal constitution. Because the trial court "exceeded the rules that govern its authority when it imposed the fine," he argued, "the sentence in this case exceeded the maximum allowable by law, and this court has jurisdiction over the case."

This time, the commissioner agreed with defendant. He concluded that, because defendant

"made a colorable showing that the trial court imposed a fine in excess of the minimum required by law solely because appellant pleaded no contest and that, by doing so, the trial court imposed a sentence that exceeds the maximum allowable by case law or under the state or United States constitutions."

3

The state petitioned for reconsideration, asserting that, under ORS 138.050(1)(a), a sentence "exceeds the maximum allowable by law" only when it exceeds limits imposed by statute or administrative rule. In this case, the state noted, defendant cites no statute or administrative rule that the trial court violated in imposing the challenged fine. To the contrary, his sole contention appears to be that the fine violates the Due Process Clause of the federal constitution. The problem is, the state asserted, ORS 138.050(1)(b) limits the sort of constitutional challenges to sentences imposed after a guilty or no contest plea to claims that the sentences are "unconstitutionally cruel and unusual."

The Chief Judge of the Court of Appeals denied the state's petition. The state then petitioned this court for review. We granted review to resolve whether the Court of Appeals has jurisdiction to review defendant's claim.

B.    *The Parties' Contentions*

On review, the state reiterates its contention that, under ORS 138.050, a sentence imposed after a defendant pleads no contest may be appealed on only one of two narrow grounds. First, under ORS 138.050(1)(a), a defendant may appeal if there is a colorable showing that the sentence "exceeds the maximum allowable by law." Second, under ORS 138.050(1)(b), a defendant may appeal if there is a similar showing that the sentence is "unconstitutionally cruel and unusual." According to the state, because defendant does not assert that the fine at issue is unconstitutionally cruel and unusual, the only issue is whether it "exceeds the maximum allowable by law" within the meaning of ORS 138.050(1)(a).

4

The state argues that the plain meaning of the wording of that provision defeats defendant's assertion of jurisdiction in this case. The state reasons that, under the ordinary meaning of the statute's terms, a sentence "exceeds" a "maximum" only when it goes beyond a quantitative limit established by "law." According to the state, defendant fails to identify any quantitative limit established by any law that the fine exceeds in this case. Aside from that, the state argues, the "law" to which ORS 138.050(1)(a) refers is a statute or administrative rule. The state acknowledges that, in the abstract, the term "law" can also embrace constitutions. It nevertheless contends that, in this context, if the word were given that broader definition, that would render the separate ground for appeal stated in ORS 138.050(1)(b) entirely superfluous.

The state argues that, even assuming that the bare wording of the statute were ambiguous, the legislative history of ORS 138.050(1)(a) makes clear that the legislature intended to permit an appeal of a sentence imposed following a guilty or no contest plea only on the narrow grounds that the sentence exceeds a quantitative limit established by statute or is unconstitutionally cruel and unusual. The state also contends that prior versions of ORS 138.050, along with judicial interpretations of it, consistently have emphasized that the statute was intended to authorize only limited appellate review of sentences. Moreover, the state observes, the legislature, in adopting more recent amendments to ORS 138.050, specifically considered *and rejected* a proposed amendment that would have permitted constitutional challenges to a sentence other than that it is cruel and unusual.

Defendant argues that the "plain text" of ORS 138.050(1)(a) makes clear

5

that "the legislature intended to authorize appellate review of all constitutional challenges to dispositions following no contest and guilty pleas." A sentence "exceeds the maximum allowable by law," he contends, when the trial court goes beyond its statutory *or constitutional* authority in imposing it.

According to defendant, that ORS 138.050(1)(a) is not limited to nonconstitutional challenges is borne out by the fact that, in a number of cases arising under the parallel provision of ORS 138.040(1)(b)(A), this court has entertained constitutional challenges other than assertions that the sentence is cruel and unusual. ORS 138.050, he urges, should be interpreted in like fashion.

As for legislative history, defendant contends that the history of the 1985 amendments to the statutes "provide[s] definitive evidence that the legislature intended to authorize appellate review of all constitutional challenges to dispositions following no contest and guilty pleas." Defendant argues that we should ignore the legislative history of the more recent amendments to the statute on which the state relies.

## II. ANALYSIS

It is a well-settled principle that "[a] party does not have an inherent right to appellate court review; the right to appeal is wholly statutory and an appellant must establish that the decision from which the appeal is taken is appealable under some statutory provision." *Waybrant v. Bernstein*, 294 Or 650, 653, 661 P2d 931 (1983). In this case, both parties agree that the relevant statutory grant of appellate jurisdiction is ORS 138.050, which provides that, subject to an exception not pertinent to this case,

"(1) * * * a defendant who has pleaded guilty or no contest may

6

take an appeal from a judgment or order described in ORS 138.053 [setting out the form and content of an appealable judgment or order] only when the defendant makes a colorable showing that the disposition:

    "(a)    Exceeds the maximum allowable by law; or

    "(b)    Is unconstitutionally cruel and unusual.

    "* * * * *

    "(3)    On appeal under subsection (1) of this section, the appellate court shall consider only whether the disposition:

    "(a)    Exceeds the maximum allowable by law; or

    "(b)    Is unconstitutionally cruel and unusual."

The focus of the parties' dispute is on the meaning of ORS 138.050(1)(a) and the scope of its phrasing that a defendant who has pleaded guilty may appeal to assert that a disposition "[e]xceeds the maximum allowable by law."

The issue is one of statutory construction, governed by familiar principles that require us to ascertain the meaning of the statute most likely intended by the legislature that adopted it. *State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009). We ascertain the legislature's intentions by examining the text of the statute in its context, along with relevant legislative history, and, if necessary, canons of construction. *Id.*

As the nature of the parties' arguments makes clear, determination of what the legislature most likely intended ORS 138.050(1)(a) to mean is a complex matter. To begin with, some of the phrasing in the statute is intrinsically ambiguous. As Jerome Frank observed, the term "law" fairly "drips with ambiguity." Jerome Frank, *Courts on Trial* 66 (1950). Bryan Garner has identified no fewer than nine different senses in which the word "law" is commonly used, including a broad reference to the aggregate of all

7

legislative, administrative, and judicial action, as well as a more narrow reference to statutes alone. Bryan A. Garner, *A Dictionary of Modern Legal Usage* 503-04 (2d ed 1995).

Complicating matters is the fact that ORS 138.050 is but a part of a larger statutory scheme involving appeal and review of sentencing and other dispositions in criminal cases, a scheme that has been the subject of legislative amendment and judicial interpretation, followed by further legislative amendment and further judicial interpretation.

Consequently, to place the parties' arguments in this case in proper context, we begin with a description of the origins of ORS 138.050 and how it relates to the larger scheme of statutes of which it is a part before turning to an analysis of the statute's text and intended meaning. The description is fairly detailed, but necessarily so. Both parties tend to cherry-pick from the history of the relevant statutes and the cases construing them, and only by providing a more complete account may we fairly assess their arguments and identify the likely intentions of the legislature in enacting those statutes.

In brief, we conclude that, although defendant's proposed construction of the bare wording of ORS 138.050 is not wholly implausible, that construction becomes untenable when considered in the light of other indicia of legislative intent, in particular, other parts of ORS 138.050, related sentencing statutes, and this court's prior construction of the statute. Defendant's reliance on prior decisions of this court is misplaced; none was decided under the version of ORS 138.050(1)(a) that is at issue in this case. His reliance on legislative history is similarly misplaced.

8

A.  *The History of ORS 138.050 and Its Prior Interpretation*

1.  *Historical Context*

At common law, appellate review of criminal sentences did not exist; in fact, there was no right to criminal appeal at all.  *See generally* Lester B. Orfield, *Criminal Appeals in America* 215-16 (1939).  The Oregon legislature first conferred appellate jurisdiction to review a judgment entered in a criminal case in 1864.  General Laws of Oregon, Crim Code, ch XXIII, § 226, p 480 (Deady 1845-1864).  The statute provided:

> "An appeal to the supreme court may be taken by the defendant, from a judgment on a conviction in a circuit court; and upon the appeal, any actual decision of the court, in an intermediate order or proceeding forming a part of the judgment roll, as prescribed by section 192, may be reviewed."

Like nearly all state statutes at the time, however, Oregon's said nothing about appellate court review of sentences.

In 1905, the legislature adopted indeterminate sentencing laws.  Under the new legislation, when a defendant was convicted of a felony for which the maximum punishment did not exceed 20 years' imprisonment, the court was authorized to exercise discretion and sentence the defendant to an indeterminate period of incarceration, provided that "such imprisonment shall not in any event exceed the maximum term provided by law for the crime of which the prisoner was convicted and sentenced." Lord's Oregon Laws, title XVIII, ch XI, § 1592 (1910).

In *State v. Lewis*, 113 Or 359, 230 P 543, *on reh'g*, 232 P 1013 (1925), this court first addressed the authority of an appellate court to review a sentence imposed

9

under the indeterminate sentencing laws after a defendant pleaded guilty. The court concluded that the legislature implicitly conferred such authority in the 1864 statute that created a right of appellate review of "a judgment on a conviction," which the court held included convictions based on guilty pleas. The court explained that the effect of a guilty plea is to admit the facts as charged in the indictment; but that does not preclude a defendant who has so pleaded from advancing purely legal challenges to the lawfulness of the conviction or the sentence that resulted. *Id.* at 361-62. As an example, the court cited the imposition of a sentence that exceeded the maximum provided by statute. If, the court observed, "in pronouncing judgment, the court imposes a sentence in excess of that provided for by statute, a legal wrong results to the defendant, which, if it could not be corrected upon appeal, would leave the defendant remediless." *Id.* at 362.

In 1945, the legislature enacted a new statute that made explicit the right of a defendant who pleaded guilty to appeal, but that also limited the nature of the issues that could be the basis of such an appeal to the excessiveness of the sentence:

> "An appeal may be taken by the defendant who has plead [*sic*] guilty from a judgment on conviction, where the judgment of conviction imposes an excessive fine, or imposes excessive, cruel or unusual punishment. * * * On such appeal, the appellate court shall only consider the question as to whether an excessive fine has been imposed, or excessive, cruel or unusual punishment has been inflicted which is not proportionate to the offense. If, in the judgment of the appellate court, the fine imposed or the punishment inflicted is excessive, unusual or cruel and not proportionate to the offense, it shall direct the court from which the appeal is taken to impose the punishment which should be administered."

Or Laws 1945, ch 62, § 1, *compiled at* OCLA 26-1304a (1944-1947 Secondary Pocket Part).

10

This court first addressed the purpose and effect of the 1945 legislation in *State v. Ridder*, 185 Or 134, 202 P2d 482 (1949). In that case, the defendant pleaded guilty to a charge of first-degree arson and was sentenced to a term of ten years' incarceration. *Id.* at 136. Some months after sentencing, he filed a motion to set aside the judgment of conviction on the ground that he was not guilty of the charge. *Id.* When the motion was denied, the defendant appealed, invoking OCLA 26-1304a (1945) as the basis for the appeal. This court rejected the appeal, explaining that

> "[t]he obvious purpose of the statute * * * is to empower us to review the discretion of the Circuit Court in passing sentence after a plea of guilty, and, if we are of the opinion that the punishment is excessive, unusual or cruel, and not proportionate to the offense, to determine what punishment should have been imposed and to direct the court below to change the sentence accordingly."

*Id.* at 137. The sole question, the court explained, was whether the sentence was excessive, unusual, cruel, or not proportionate to the offense. *Id.* The court observed that there was nothing before it to suggest that the sentence was cruel, unusual, or disproportionate to the offense. *Id.* at 139. That left the question whether the sentence was "excessive." On that matter, the court concluded that the fact that the sentence was within the range permitted by statute was dispositive:

> "We have nothing * * * upon which to act except the bare fact that the defendant was sentenced to serve a term of not to exceed ten years in the penitentiary on a plea of guilty to a crime which carries with it a minimum penalty of not less than two years and a maximum penalty of not more than twenty years. This, we need hardly say, does not warrant us in disturbing the sentence."

*Id.* at 138 (citation omitted).

In 1953, when the legislature revised and codified existing statutes into the

11

Oregon Revised Statutes, both the original grant of jurisdiction over appeals of criminal convictions generally and the 1945 statute authorizing appeals from judgments on guilty pleas were still in force. The former was codified at ORS 138.040 (1953), with its wording essentially unchanged from the original 1864 version. The latter was codified at ORS 138.050 (1953), with its wording also essentially unchanged from its 1945 original.

In *State v. Jairl*, 229 Or 533, 368 P2d 323 (1962), the court addressed the effect of the enactment of the 1945 statute, later recodified as ORS 138.050. The defendant in *Jairl* had been charged with forgery. *Id.* at 534. He moved to dismiss the charges, but later withdrew the motion. The defendant then pleaded guilty, and the trial court sentenced him to a term of incarceration. *Id.* at 537. The defendant appealed, arguing that, among other things, the trial court should have ruled on his motion to dismiss the charges. This court, on its own motion, dismissed the appeal. *Id.* at 538.

The court explained that ORS 138.040 was the only statute "with language broad enough to justify an appeal of the grounds submitted by the defendant." *Id.* at 539. The court noted that its opinion in *Lewis* held that even a defendant who had pleaded guilty could appeal a resulting judgment of conviction in a variety of purely legal grounds, including the grounds raised by the defendant in *Jairl*. 229 Or at 540. The problem, the court stated, was that, since *Lewis*, the legislature had enacted ORS 138.050. The enactment of that statute, in effect, "overruled" *Lewis*:

> "We believe that the legislature intended to prohibit appellate review of convictions based upon a plea of guilty except to the limited extent granted by ORS 138.050. The restrictive language of ORS 138.050 would have no effect if a defendant could appeal alternatively under ORS 138.040 and [ORS] 138.050 or concurrently under both statutes. ORS 138.050 must

12

be held to overrule by implication the interpretation which this court placed on ORS 138.040 in *State v. Lewis*."

*Jairl*, 229 Or at 541.  The defendant's remedy, the court held, lay under the Post-Conviction Hearing Act.  "He is entitled to no more."  *Id.* at 542.

2.    *The 1977 Amendments*

In 1977, the legislature extensively revised Oregon's criminal sentencing laws, adopting a new system that was something of a precursor to the sentencing guidelines that it would adopt two decades later.  HB 2013 (1977).  Under the new law, trial judges imposing a sentence of incarceration following a felony conviction were required to receive a presentence report from the Corrections Division with the division's recommendations as to an appropriate sentence.  *Former* ORS 144.790 (1977), *repealed by* Or Laws 1995, ch 520, § 3.  The trial judge then was required to sentence the offender to imprisonment "for an indeterminate period of time," but stating in the judgment "a maximum term for the crime, which shall not exceed the maximum term of imprisonment provided by law therefor."  ORS 137.120(2) (1977).  The statute required the trial court to "state on the record the reasons for the sentence imposed."  *Id.*  Then, following the offender's admission to a state penal or correctional institution, the Board of Parole was required to determine an initial parole release date, based on the sentencing report, along with a set of rules -- a "matrix" -- establishing ranges of duration of imprisonment based primarily on the seriousness of the offender's conduct and criminal history.  *See generally Hamel v. Johnson*, 330 Or 180, 185-86, 998 P2d 661 (2000) (explaining matrix system).

As part of the changes to the state's sentencing laws, the legislature

13

amended ORS 138.050 to provide that a defendant who had pleaded guilty could appeal a judgment that "imposes a sentence that is cruel, unusual or excessive in light of the nature and background of the offender or the facts and circumstances of the offense." ORS 138.050 (1977). The legislature also, for the first time, substantially revised the statute pertaining to appeal of a conviction entered after a trial, so that, under ORS 138.040, the appealability of the sentence imposed was identical to that provided under ORS 138.050.

The legislative history of the enactment makes clear that the legislature consciously determined that such "symmetry" between the two statutes was appropriate. Minutes, House Committee on Judiciary, Apr 26, 1977, 13. The legislative history does not, however, shed light on the intended scope of the appellate courts' authority to entertain a challenge that a sentence is "cruel, unusual or excessive in light of the nature and background of the offender or the facts and circumstances of the offense." ORS 138.050 (1977). There was a brief colloquy in a hearing before the House Judiciary Committee, in which then-Representative Dave Frohnmayer asked about the meaning of the reference to "cruel" and "unusual" sentences. Minutes, House Committee on Judiciary, Apr 26, 1977, 12. Multnomah County Circuit Court Judge John Beatty, speaking on behalf of the Oregon Judicial Conference, replied that the terms would likely be interpreted to embrace the constitutional standard. *Id.* He speculated that nothing within a statutory range would be considered unconstitutionally cruel and unusual, but that the use of the term "excessive" he considered "open," apparently in reference to the fact that the new law called for review of a sentence in terms of "the facts and circumstances of the offense," and not just the statutory range. *Id.* The subject did not

14

resurface during the hearings.

The "maximum term of imprisonment," meanwhile, continued to be set out by statute, as it had been for years. By now, however, the legislature employed phrasing that explicitly referred to the limits of a court's sentencing authority in terms of a "maximum term" of imprisonment. ORS 161.605 (1977), for example, provided that "[t]he maximum term of an indeterminate sentence of imprisonment for a felony" was 20 years for a Class A felony, 10 years for a Class B felony, and 5 years for a Class C felony. The maximum amount of fines also was set out by statute. ORS 161.625 (1977), for example, provided that a fine imposed for a felony could not exceed $2,500.

The Court of Appeals addressed the 1977 version of ORS 138.050 in *State v. Dinkel*, 34 Or App 375, 579 P2d 245 (1978), *rev den*, 285 Or 195 (1979). In that case, the defendant pleaded guilty to multiple charges of kidnapping, robbery in the first degree, burglary in the first degree, and unauthorized use of a motor vehicle. *Id.* at 378. The sentence that the trial court imposed included a combination of concurrent and consecutive terms of imprisonment. The defendant appealed, arguing that the consecutive sentences were excessive under the circumstances and constituted cruel and unusual punishment. *Id.* at 379.

The court began by noting that, under the pre-1977 version of ORS 138.050, "sentences reviewed under its purview were not found to be excessive as long as they were within the statutory maximum allowed for any given offense." *Id.* at 384. The court explained that the amended version of the statute, in contrast, authorized appellate courts to engage in "substantive appellate review of a sentence." *Id.* at 385. The court

15

explained that the legislative history of the 1977 version "provides little guidance" as to the scope of appellate court authority it entails. *Id.* But, based on the phrasing of the amended law that permitted the appellate court to consider not just the statutory maximum sentence but also "the nature and the background of the offender and the facts and circumstances of the offense," the court concluded that the legislature apparently intended to broaden the scope of appellate court authority to review sentences in criminal cases. *Id.* at 385.

The court cautioned that ORS 138.050 (1977) did not authorize *de novo* review and did not allow an appellate court to substitute its "notion of an appropriate sentence for that of the trial court." *Id.* at 387. Instead, the court explained:

"We presently perceive of only two circumstances which would authorize and require intervention by us in sentencing decisions. The first would arise if a trial court failed to comply with its statutory duty under ORS 144.790(1) by not considering a presentence report, or violated ORS 137.120(2) by failing to state on the record its reasons for the sentence imposed. The second circumstance would arise only when we find that a sentence imposed by a trial court is, as other jurisdictions with similar sentence review statutes have stated, 'clearly mistaken' or a 'clear abuse of discretion.'"

*Id.* at 387-88 (citations omitted). Applying that standard, the court concluded that the trial court did not err in imposing 65 years' imprisonment because the sentence did not violate a sentencing statute and did not represent a clear abuse of discretion. *Id.* at 389-90.

A year later, in *State v. Biles*, 287 Or 63, 66-67, 597 P2d 808 (1979), this court expressly adopted the reasoning of *Dinkel* and agreed that ORS 138.050 (1977), as amended, broadened the authority of appellate courts to review sentences beyond the

16

question whether the sentences exceeded any applicable statutory maximums. In *Biles*, the defendant pleaded no contest to a charge of unauthorized use of a motor vehicle. 287 Or at 65. The defendant then appealed, arguing that the sentence was unlawful because, among other things, the trial court had failed to order a presentence report, as required under the 1977 amendments to the state's sentencing statutes. *Id.* at 65-66. The Court of Appeals had reversed and remanded the case for resentencing, in light of the trial court's failure to order a presentence report. *State v. Biles*, 34 Or App 531, 533, 579 P2d 259 (1978), *rev'd*, 287 Or 63, 597 P2d 808 (1979). The state sought review, arguing that ORS 138.050 (1977) authorized a criminal defendant who pleaded guilty to challenge only the excessiveness of his or her sentence.

On review, this court rejected the state's contention, explaining that, as the Court of Appeals had correctly concluded in *Dinkel*, the amendments to the statute broadened the authority of appellate courts to review sentences imposed following a guilty plea. The court noted that the amendments require appellate courts to evaluate the sentence "in light of the nature and background of the offender or the facts and circumstances of the offense." *Biles*, 287 Or at 66 (quoting ORS 138.050 (1977)). It follows, the court reasoned, that appellate courts "necessarily possess the power to require trial court compliance with the procedural statutes that make performance of those duties possible." *Id.* at 68.

In *State v. Clevenger*, 297 Or 234, 683 P2d 1360 (1984), however, this court concluded that *Biles* should not be read to hold that all procedural errors were appealable under ORS 138.050 (1977). The court explained that, under ORS 138.050, a

17

defendant who has pleaded guilty may appeal only when the trial court's errors make it impossible for the appellate courts to determine whether the actual sentence imposed was "excessiv[e]." *Clevenger*, 297 Or at 245-46.

3. *The 1985 Amendments*

In the meantime, the Court of Appeals found itself awash in appeals involving defendants who had pleaded guilty or no contest, but then asked the appellate court to review the excessiveness of the sentence "in light of the nature and background of the offender or the facts and circumstances of the offense." ORS 138.050 (1977). The court typically rejected such challenges, citing its opinion in *Dinkel* for the proposition that it was authorized to review sentences only to the extent that the sentence was "clearly mistaken" or a "clear abuse of discretion" in light of the statutes governing the imposition of sentences in criminal cases. *See, e.g.*, *State v. Larsen*, 44 Or App 769, 607 P2d 212, *rev den*, 289 Or 275 (1980).

In 1985, the Court of Appeals asked the legislature to amend ORS 138.050 to narrow appellate court jurisdiction to review sentencing decisions. The bill to accomplish that narrowing of appellate court jurisdiction was introduced as House Bill (HB) 2126 (1985). That bill proposed to strike any reference to authorizing an appeal when the sentence is excessive "in light of the nature and background of the offender or the facts and circumstances of the offense." In place of the stricken phrase, the bill proposed to substitute appellate court jurisdiction only when a sentence "exceeds the maximum sentence allowable by law or is unconstitutionally cruel or unusual." On such an appeal, the bill proposed, "the appellate court shall only consider the question whether

18

a sentence has been imposed that exceeds the maximum sentence allowable by law or is unconstitutionally cruel or unusual."  HB 2126 (1985).

On its face, the wording of the bill appeared to call for a return to the scope of appellate court authority to review sentences to the pre-1977 limits, that is, appellate courts would have authority to review only to determine whether the sentence exceeded the statutory maximum or was otherwise unconstitutionally cruel and unusual.  And, indeed, that is how the bill was characterized at several junctures in its legislative history.  Unfortunately, the legislative history is not entirely consistent on the point.

At the initial hearing on the bill before the House Committee on Judiciary, Chief Judge George Joseph submitted written testimony that explained that, "[u]p to 1977, a person convicted after trial or on a guilty plea could raise on appeal only the issues of whether the sentence imposed exceeded that which was statutorily permitted or violated the federal or state constitutional prohibitions against cruel and unusual punishments."  Testimony, House Committee on Judiciary, HB 2126, Feb 21, 1985, Ex G (statement of Chief Judge Joseph).  Chief Judge Joseph explained that, in 1977, the legislature had broadened the authority of appellate courts to review sentences for excessiveness "'in light of the nature and background of the offender or the facts and circumstances of the offense.'" *Id.* (quoting ORS 138.050 (1977)).  The Chief Judge noted, however, that, despite the 1977 legislation, the appellate courts continued to entertain challenges to criminal sentences only on very narrow grounds.  *Id.*  Referring to the Court of Appeals decision in *State v. Dinkel*, the Chief Judge stated flatly that "we <u>do</u> <u>not</u> ever set aside a sentence as 'excessive in light of the nature and background of the

19

offender or the facts and circumstances of the offense,'" as doing so puts the appellate courts at odds with the Board of Parole, which the Chief Judge stated is more appropriately responsible for making such determinations. *Id.* (underlining in original) (quoting ORS 138.050 (1977)). According to Chief Judge Joseph, HB 2126 simply reflected the reality of appellate court practice, and its passage -- while reducing the workload of the Court of Appeals -- "will have absolutely no effect on the practical rights of defendants." *Id.* (underlining omitted).

The Oregon Department of Justice supported the bill. Solicitor General James Mountain explained:

> "In its current form, HB 2126 would codify present practice in the State of Oregon. Although the language of ORS 138.040 and 138.050 arguably can be read to provide for a more expansive appellate review of criminal sentences, the Court of Appeals pragmatically and practically has construed and applied the statutes narrowly. Presently, the Court of Appeals reviews sentences based upon standards substantially similar to the criteria which HB 2126 expressly would provide."

Testimony, House Committee on Judiciary, HB 2126, Feb 21, 1985, Ex H (statement of Solicitor General James Mountain). The Solicitor General did suggest one amendment to the bill. He explained that, while HB 2126 authorizes review of a sentence to determine whether it is unconstitutionally "cruel or unusual," in the disjunctive, the actual phrasing of the state and federal constitutions is in the conjunctive -- "cruel and unusual." *Id.* (underlining in original).

At a second hearing before the House Committee on Judiciary, Chief Judge Joseph again explained that the reason for the bill was one of workload control. "We want out of the sentence review business," he explained. Tape Recording, House

20

Committee on Judiciary, Subcommittee 1, HB 2126, Mar 4, 1985, Tape 171, Side A (statement of Chief Judge Joseph). He elaborated:

> "We are not a sentencing court, we do not sentence people, we have no basis to compare sentences, we have no basis to compare people that appear before us. Unfortunately, as it stands, the [current] legislation is an invitation to appeal, even though in *State v. Dinkel*, we said we have no facility for doing it in the way the statute seems to describe and, frankly, we said we wouldn't do it and we haven't done it."

*Id.* The Chief Judge hastened to add, however, that the legislature should "[p]lease keep in mind we still continue to review sentences for unconstitutional cruelty or unusualness and we will examine sentences for lawfulness *within the statutory limits*." *Id.* (emphasis added).

At another hearing before the House Committee on Judiciary, then-Judge W. Michael Gillette similarly explained that the purpose of HB 2126 was "to have the law stay with [what the] present practice is before the Court of Appeals." Tape Recording, House Committee on Judiciary, Subcommittee 1, HB 2126, May 20, 1985, Tape 649, Side A (statement of Judge Gillette). At that same hearing, there was a motion to amend the bill to make the correction in phrasing -- changing "cruel *or* unusual" to "cruel *and* unusual" -- that the Solicitor General had suggested. The motion passed without objection. Minutes, House Committee on Judiciary, May 20, 1985, 6.

The bill passed out of the House and was referred to the Senate Judiciary Committee. At the initial hearing on the bill, Judge Gillette stated that the purpose of HB 2126 "is designed to conform the language of the law with what is, by and large, the present practice in the Court of Appeals with respect to review of sentences." Minutes,

21

Senate Judiciary Committee, June 11, 1985, 16 (statement of Judge Gillette). He explained that, under current appellate court practice, the court reviews criminal sentences in only three ways: first, "to determine if the sentence is unconstitutional because it is cruel and unusual"; second, to determine whether "it is illegal because it is in excess of the maximum sentence which may be imposed by law"; and third, to determine whether the sentence is "disproportionate" in the nonconstitutional sense that "it just isn't fair." *Id.* The bill, Judge Gillette said, was designed to eliminate the third of those practices. *Id.*

In response to a question from the Chair of the committee, however, Judge Gillette suggested that the scope of appellate court authority under HB 2126 might be broader. The Chair asked whether the bill would authorize appellate courts to review a case in which a defendant convicted of aggravated murder were given a lesser sentence than a defendant who had been convicted of "plain garden variety murder." Judge Gillette replied that the Court of Appeals, "under this bill, [would still] have jurisdiction over that kind of problem, because that problem is constitutional" given that the Chair's hypothetical implicated the Equal Protection Clause of the Fourteenth Amendment and the privileges and immunities clause of the state constitution. Tape Recording, Senate Judiciary Committee, HB 2126, June 11, 1985, Tape 186, Side B (statement of Judge Gillette).

At a later hearing before the Senate Judiciary Committee, Chief Judge Joseph again explained that the purpose of the bill was "restricting the scope of review and would take us out of what we refer [to] generally as 'the sentence review business,'

22

which the court has statutory authority to do, which we have not exercised in any general way." Tape Recording, Senate Judiciary Committee, HB 2126, June 12, 1985, Tape 190, Side B (statement of Chief Judge Joseph). Interestingly, Senator Ed Fadeley asked whether, because the bill appeared to foreclose the authority of the appellate courts to review constitutional challenges other than that the sentence is cruel and unusual, the bill itself is unconstitutional. *Id.* (statement of Sen Fadeley). Chief Judge Joseph replied simply that "[m]y primary issue in the bill is to attempt to reduce the impact of our having to sit, or being required to sit, in judgment of sentences for which we have no facility and for which those in other agencies are empowered." *Id.* (statement of Chief Judge Joseph). Senator Margie Hendrickson then asked whether, in fact, it was true that the bill would so restrict appellate authority, and Chief Judge Joseph replied, "That is correct." *Id.* He then added that, under the current law, "I think it's fair to say, that we have in fact said that we are not likely to set aside a sentence that is within the limits of the law of the statute and is otherwise constitutionally sound under the statute." *Id.*

HB 2126 ultimately passed into law. Shortly after the passage of the bill, this court had occasion to determine its effect in *State v. Loyer*, 303 Or 612, 740 P2d 177 (1987). In that case, the defendant pleaded guilty to assault in the third degree and attempted kidnapping in the second degree. *Id.* at 614. The trial court ordered a psychiatric examination in preparation for a hearing about whether the defendant should be sentenced as a dangerous offender. ORS 161.735. At the hearing, the state introduced an affidavit of the examining psychiatrist. The defendant asked the court to reset the hearing so that the psychiatrist could be summoned to the hearing and be cross-examined.

23

The trial court denied the motion and sentenced the defendant as a dangerous offender, imposing a 30-year sentence with a 10-year minimum. *Loyer*, 303 Or at 614-15. The defendant appealed, arguing that the trial court erred in imposing a sentence without permitting him to cross-examine the state's psychiatrist. *Id.* at 615. He asserted that the failure of the sentencing court to permit him to cross-examine the witness violated ORS 161.735, as well as the confrontation guarantees of the state and federal constitutions and the Due Process Clause of the Fourteenth Amendment. Petition for Review, *Loyer*, 303 Or 612 (S33447). The defendant argued that, under this court's prior decisions in *Biles* and *Clevenger*, appellate courts have authority to review such matters involving the lawfulness of procedures by which trial courts arrive at a sentence imposed after a guilty plea. *Loyer*, 303 Or at 615.

This court rejected the defendant's reliance on *Biles* and *Clevenger* and concluded that his contentions were beyond the authority of the court to consider.[1] The court explained that it was "significant" that *Clevenger* and *Biles* interpreted a different version of ORS 138.050:

> "The statute we interpreted in *Clevenger* and *Biles* directed us to review a sentence 'in light of the nature and background of the offender or the facts and circumstances of the offense.' We held this to require 'some substantive review of sentences by appellate courts in Oregon' and hence authority to review the process by which the sentence was derived.

---

[1] The court described ORS 138.050 as a statute that limits the "scope of review" of appellate courts. That is not precisely correct, as that statute sets out the types of judgments that may be *appealed*. We do not understand that inaccurate phrasing to have made a difference in the reasoning of the court's analysis of the statute, however.

"In contrast, the current version of ORS 138.050 narrows considerably our scope of review."

*Loyer*, 303 Or at 616 (citations omitted). In *Loyer*, the court stated, the defendant's sole claim was that the trial court failed to follow the proper procedure in imposing a sentence. The problem, the court said, was that the "defendant makes no claim that -- and how -- the procedural flaw prevents us from determining upon appellate review whether the sentence 'exceeds the maximum sentence allowable by law or is unconstitutionally cruel and unusual.'" *Id.* at 617 (quoting ORS 138.050 (1985)). "Without more," the court concluded, "his claim of procedural error is beyond our limited scope of review. Any claim of cognizable error must be left to possible post-conviction relief * * *." *Id.*

4. *The 1989 Amendments*

In 1989, the legislature overhauled the state's sentencing law and adopted what are known as the "sentencing guidelines." In brief, the new legislation provided that, for felonies committed on or after November 1, 1989, trial courts must impose a "presumptive sentence" determined by reference to rules of the Oregon Criminal Justice Commission, unless the courts make certain findings that would justify a departure from the presumptive sentence. Or Laws 1989, ch 790. *See generally State v. Davis*, 315 Or 484, 486-89, 847 P2d 834 (1993) (summarizing sentencing guidelines legislation).

As part of the package of legislation concerning the new sentencing law, the legislature enacted what is now ORS 138.222, governing appeal and review of sentences imposed for felonies committed on or after the effective date of the sentencing guidelines law. The statute begins by authorizing appeals of judgments of conviction

25

based on a sentence for felonies committed on or after November 1, 1989. ORS 138.222(7). It then specifies the scope of review in such appeals with explicit reference to ORS 138.040 and ORS 138.050. It states that "[n]otwithstanding the provisions of ORS 138.040 and 138.050, a sentence imposed for a judgment of conviction entered for a felony committed on or after November 1, 1989, may be reviewed only as provided by this section." ORS 138.222(1). Among other things, the statute provides that the appellate courts may *not* review a sentence "that is within the presumptive sentence prescribed by the rules of the Oregon Criminal Justice Commission." ORS 138.222(2)(a). When a sentence does depart from the presumptive sentence, review is limited to whether the sentencing court's findings of fact and reasons justifying a departure "[a]re supported by the evidence in the record" and "[c]onstitute substantial and compelling reasons for departure." ORS 138.222(3). What the appellate courts *may* review are three types of error:

"(a)    The sentencing court failed to comply with requirements of law in imposing or failing to impose a sentence;

"(b)    The sentencing court erred in ranking the crime seriousness classification of the current crime or in determining the appropriate classification of a prior conviction or juvenile adjudication for criminal history purposes; or

"(c)    The sentencing court erred in failing to impose a minimum sentence that is prescribed [by statute]."

ORS 138.222(4).

In a nutshell, then, appeal and review of sentences imposed for felonies committed after November 1, 1989, are governed by ORS 138.222. ORS 138.040 and

26

ORS 138.050 now apply only to appeal and review of sentences for misdemeanor offenses.

Meanwhile, during the same 1989 session, the legislature amended ORS 138.040 and ORS 138.050 yet again. The amendments were prompted by uncertainty about whether a term of probation was within the meaning of the "sentence" that a defendant could challenge on appeal under ORS 138.040. In *State v. Carmickle*, 307 Or 1, 6-7, 762 P2d 290 (1988), this court concluded that, although an order of probation was appealable on other grounds, it was not a "sentence" within the meaning of ORS 138.050.

House Bill (HB) 2470 (1989) was introduced in direct response to *Carmickle* to make clear that probation is among the categories of sentencing decisions that are subject to the appellate jurisdiction of the courts. Among other things, the bill proposed to amend both ORS 138.040 and ORS 138.050 by replacing the word "sentence" with the word "disposition." A new provision then specified that an appealable disposition includes one that,

"(a) Imposes a sentence on conviction.

"(b) Suspends imposition or execution of sentence.

"(c) Places a defendant on probation.

"(d) Extends a period of probation.

"(e) Imposes or modifies a condition of probation or of sentence suspension.

"(f) Imposes or executes a sentence upon revocation of probation or sentence suspension."

Or Laws 1989, ch 849, § 3, *codified as* ORS 138.053(1).

The bill passed out of the House with little debate and was referred to the Senate Judiciary Committee. During an initial hearing before the committee, Bradd Swank, a representative from the Office of the State Court Administrator, explained that the wording of the bill had been worked out by representatives of the Judicial Branch and the Attorney General's Office. The goal, he explained, was to "clarify that probation can be reviewed on appeal in the same manner as a sentence." Tape Recording, Senate Committee on the Judiciary, HB 2470, May 24, 1989, Tape 195, Side A (statement of Bradd Swank).

At the same hearing, David Fidanque, the associate director of the ACLU of Oregon, testified in opposition to HB 2470, arguing that the court's jurisdiction, as provided in HB 2470, was not broad enough. Tape Recording, Senate Committee on the Judiciary, HB 2470, May 24, 1989, Tape 196, Side A (statements of David Fidanque). Fidanque complained that, because the current law limits constitutional sentencing challenges to claims that it is cruel and unusual, it precludes review of other important constitutional issues. Changing the scope of the statutes to dispositions that more plainly include probation decisions, he suggested, did nothing to allow review of the constitutionality of those probation decisions -- specifically condition of probation decisions -- on grounds other than those that are unconstitutionality cruel and unusual. Fidanque suggested that HB 2470 should be modified to provide that the court had jurisdiction over cases where the defendant alleges that the disposition "exceeds the maximum allowable by law" or "is unconstitutional," deleting the restriction that only provided review of allegations that a disposition was unconstitutionally "cruel and

28

unusual." *Id.* (statement of David Fidanque).

Senator Ron Grensky then asked Fidanque whether his concern was with the federal or state constitution. *Id.* (statement of Sen Grensky). Fidanque replied that, "[i]n fact, we are primarily concerned with the state constitution," specifically, "[t]he Bill of Rights, Article I. Everything from freedom of expression to freedom from unreasonable searches and seizures to protection against disproportionate punishment." *Id.* (statement of David Fidanque). The hearing, however, adjourned with that issue left for future discussion.

On May 30, 1989, Chief Judge Joseph submitted a letter to Senator Cohen in response to the Senate Judiciary Committee's concerns regarding the review of unconstitutional probation conditions. Chief Judge Joseph wrote that, by deleting "cruel and unusual punishment," the ACLU was attempting to "broaden the scope of review in some mysterious way, presumably to avoid the present limitation." Letter, Senate Committee on the Judiciary, HB 2470, May 30, 1989, Ex L (statement of Chief Judge Joseph). Chief Judge Joseph suggested that the ACLU was hoping to bring back the sort of "proportionality review" that the legislature had abandoned in 1985. *Id.* He noted that he had "previously spoken strongly against that scope of review, and [he] therefore strongly oppose[d] the ACLU's proposed amendment." *Id.*

On that same day, the Senate Judiciary Committee held a hearing to discuss the proposed ACLU amendments and Judge Joseph's letter. Dale Penn, a representative from the Oregon District Attorneys Association, began by explaining how HB 2470 would affect the court's jurisdiction over claims relating to probation conditions. He

29

explained that HB 2470 would allow review of a probation condition as to whether it was "unconstitutionally cruel and unusual" and "it also allows for an appeal of a probationary sentence if it exceeds the maximum allowable by law." Tape Recording, Senate Committee on the Judiciary, HB 2470, May 30, 1989, Tape 208, Side B (statement of Dale Penn). Senator Bob Shoemaker asked Penn the difference between "unconstitutional" and "unconstitutionally cruel and unusual." *Id.* (statement of Sen Shoemaker). Penn responded that, under the former phrase, "any constitutional argument may go forward whatever that argument is," not just an argument that the sentence is cruel and unusual. *Id.* Penn explained that, under the current wording of the bill, a defendant's challenge to a sentence "would have to relate to the constitutional provisions about cruel and unusual punishment, either in the federal or the state constitution." *Id.*

After a brief discussion, Senator Dick Springer moved to amend HB 2470 to include the ACLU amendment. The committee, however, voted against the ACLU amendment. Minutes, Senate Committee on the Judiciary, May 30, 1989, 8.

The legislature has amended ORS 138.050 several times since 1989, but those changes are not relevant and do not bear on the issues in this case.[2] In the

---

[2]    In 1995, the legislature amended ORS 138.050 to delete the reference to "district court." Or Laws 1995, ch 658, § 78. In 1999, the legislature amended ORS 138.050 to delete a reference to the city recorder's court, Or Laws 1999, ch 788, § 47, and to add a reference to conditional plea agreements under ORS 135.335. Or Laws 1999, ch 135, § 4. Last, in 2001, the legislature amended ORS 138.050 to include a requirement that "the defendant make[] a colorable showing" that the disposition in question met the jurisdictional requirements of ORS 138.050(1). Or Laws 2001, ch 644, § 1.

30

meantime, this court has not had occasion to determine the impact, if any, of the 1989 amendments to ORS 138.040 and ORS 138.050 on the appealability of dispositions in misdemeanor cases and whether, in particular, those amendments were intended to broaden the jurisdiction of the appellate courts beyond the limited authority that this court had identified in *Loyer*.

B.      *Analysis of Current Version of ORS 138.050 in Context*

With the foregoing background about the origins and prior interpretation of ORS 138.050 in mind, we return to the specific issue in this case, *viz.*, whether the statute authorizes defendant to appeal a judgment of conviction on the ground that the process by which his misdemeanor sentence was imposed violates the Due Process Clause of the federal constitution.  More specifically, the question is whether such a challenge is one that the disposition "[e]xceeds the maximum allowable by law."  Defendant argues that his is such a challenge, in that any sentence having been entered in violation of the federal constitution would exceed the maximum authority of the court allowable by law.

1.      *Textual Analysis*

On the bare face of the statute itself, defendant's reading of the statute is not wholly implausible.  As we noted at the outset of the opinion, the term "law" is notoriously flexible and may readily refer to both a broader sense that encompasses, among other things, statutes and constitutions, and a narrower sense that refers solely to statutory law.  *See* Garner, *A Dictionary of Modern Legal Usage* at 503-04 (identifying nine different definitions of "law"); *Webster's Third New Int'l Dictionary* 1279 (unabridged ed 1976) (defining "law" as, among other things, "a rule or mode of conduct

31

or action that is prescribed or formally recognized as binding by a supreme controlling authority"); *Black's Law Dictionary* 884 (6th ed 1990) ("The 'law' of a state is to be found in its statutory and constitutional enactments, as interpreted by its courts.").

The state insists that, although the term "law," in the abstract, may be given the broad reading that defendant suggests, his proposed interpretation cannot be reconciled with the ordinary meaning of other words in the statute, specifically, the portion of it that refers to a disposition that "exceeds" a "maximum" that is allowable under such law. According to the state, both terms suggest a quantitative limit.

The word "exceed" ordinarily means

"1 : to extend outside of or enlarge beyond * * * 2 a : to be greater than or superior to * * * b : to be too much for * * * 3 : to go beyond a limit set by (as an authority or privilege) : do more than is justified by or allowable under (as a commission or order) * * *."

*Webster's* at 791. Similarly, the word "maximum" ordinarily refers to "the greatest *quantity* or value attainable in a given case" or "an *upper limit* allowed by law or other authority." *Id.* at 1396 (emphasis added). Thus, the state has a point in contending that to say that the imposition of a sentence in violation of the Due Process Clause amounts to "exceed[ing]" the "maximum" imposed by that clause is awkward, if for no other reason than the Due Process Clause sets no "maximum" sentence in any ordinary sense of the word.

Defendant insists that his appeal fits within the wording of the statute in this sense: The trial court, in imposing the sentence in this case, "exceeded" the "maximum" allowable by the Due Process Clause because the "court went beyond [the]

32

*authority* permitted" by that clause.

That reading is perhaps not the most natural reading of the bare wording of the statute, which suggests what must "exceed" the "maximum" allowable by law is the *sentence*, not the trial court's procedures in arriving at it. Still, it is at least possible to read ORS 138.050(1)(a) to refer to a disposition that exceeds the court's authority, whether the source of that authority is statutory or constitutional.

2. *Contextual Analysis*

In construing statutes, we do not simply consult dictionaries and interpret words in a vacuum. Dictionaries, after all, do not tell us what words mean, only what words *can* mean, depending on their context and the particular manner in which they are used. *See, e.g.*, *State v. Fries*, 344 Or 541, 546, 185 P3d 453 (2008) (context determines which of multiple definitions is the one the legislature intended). Accordingly, we look beyond the wording of ORS 138.050(1)(a) itself to its context.

a. Other Parts of ORS 138.050(1)

We begin with the immediate context, that is, the larger section within which the disputed provision appears. *Stevens v. Czerniak*, 336 Or 392, 401, 84 P3d 140 (2004) (context of a disputed statute includes "other provisions of the same statute, the session laws, and related statutes"). What immediately comes to light is the fact that defendant's interpretation introduces some obvious redundancy into the statute. As we have noted, ORS 138.050 authorizes a defendant who has pleaded guilty to appeal and challenge a disposition only upon making a colorable showing of one of two conditions -- either that the disposition "[e]xceeds the maximum allowable by law" under subsection

33

(1)(a) or that the disposition "[i]s unconstitutionally cruel and unusual" under subsection (1)(b). If, as defendant contends, a disposition "[e]xceeds the maximum allowable by law" when it is unconstitutional on any basis, then the reference to "[i]s unconstitutionally cruel and unusual" in subsection (1)(b) is unnecessary, for, under defendant's reading of the statute, a sentence that is unconstitutionally cruel and unusual is one that exceeds the maximum allowable by law.

In fact, defendant concedes the point. As he stated in his brief, "[a]dmittedly, defendant's interpretation renders subsection (1)(b) of the statute superfluous, a result this court assumes that the legislature endeavors to avoid." According to defendant, the retention of that subsection "is most properly viewed as a historical vestige rather than the legislature's intent to limit the type of constitutional challenges that the appellate courts may consider."

The problem with defendant's contention is that it cannot be reconciled with the history of the statute that we have recounted. The retention of the reference to unconstitutionally cruel and unusual dispositions was not a legislative oversight concerning a "historical vestige." Instead, it was a component of the statute that the legislature consciously and repeatedly retained.

During the 1985 legislative session, for example, the legislature took the trouble to alter the wording of subsection (1)(b) -- from "unconstitutionally cruel *or* unusual" to "unconstitutionally cruel *and* unusual" to conform more accurately to the wording of the state and federal constitutions. More to the point, during the same session, there were discussions of the scope of the provision. Senator Fadeley even

34

questioned whether the fact that the statute appeared to limit constitutional challenges to those asserting that a sentence is cruel and unusual was too constraining and, indeed, caused the statute itself to be unconstitutional. In response, another legislator asked Chief Judge Joseph if the bill that became ORS 138.050 actually was that limited, and he replied, "That is correct." Under the circumstances, it can hardly be maintained that the legislature's retention of ORS 138.050(1)(b) is an inadvertent "historical vestige."

We wish to be clear that the fact that a proposed interpretation of a statute creates some measure of redundancy is not, by itself, necessarily fatal. Redundancy in communication is a fact of life and of law. *See, e.g.*, *Riley Hill General Contractor v. Tandy Corp.*, 303 Or 390, 396-97, 737 P2d 595 (1987) (noting that legal terminology often is redundant, "sometimes for clarity, sometimes for emphasis"). In some cases, it may be what the legislature intended. *See, e.g.*, *Thomas Creek Lumber and Log Co. v. Dept. of Rev.*, 344 Or 131, 138, 178 P3d 217 (2008) ("[N]othing prohibits the legislature from saying the same thing twice * * *.").

But, at the least, an interpretation that renders a statutory provision meaningless should give us pause, both as a matter of respect for a coordinate branch of government that took the trouble to enact the provision into law and as a matter of complying with the interpretive principle that, if possible, we give a statute with multiple parts a construction that "will give effect to all" of those parts. ORS 174.010; *Vsetecka v. Safeway Stores, Inc.*, 337 Or 502, 510, 98 P3d 1116 (2004) ("When, as in this case, a statute contains multiple provisions, ORS 174.010 directs us to read those provisions, if possible, in a way that will give effect to all of them.").

35

### b. Other Related Statutes

Moving beyond the wording of ORS 138.050 itself, our account of the genesis of that statute reveals that criminal statutes have referred to "maximum" sentences for over a century, and the reference consistently has been understood to mean the upper limit of a term of incarceration or amount of a fine established by statute. As early as 1905, the first indeterminate sentencing statutes referred to a "maximum term provided by law" for felony convictions, plainly referring to the maximum duration of imprisonment set by statute. Current statutes explicitly refer to a "maximum term of an indeterminate sentence" for various offenses. ORS 161.605 (setting "maximum" term of imprisonment for various felonies). Others refer to "maximum limitations" on misdemeanor sentences. ORS 161.615. Administrative rules implementing the current sentencing guidelines similarly set presumptive sentences, but expressly provide that sentences may not "exceed the statutory maximum indeterminate sentence." OAR 213-008-0003(2).

Defendant's reading of ORS 138.050(1)(a) cannot be squared with such references to "maximum" sentences in the related statutes and regulations. According to defendant, the reference to a sentence that "exceeds the maximum allowable by law" refers to one imposed in violation of any procedural -- statutory, constitutional, or otherwise -- requirement. Adopting defendant's reading of the statute would require us to conclude that the word "maximum" means one thing in ORS 138.050(1)(a) and another thing entirely in all the other related sentencing statutes that we have mentioned. Although, in the abstract, there is nothing that precludes the legislature from defining the

36

same terms to mean different things in the same or related statutes, in the absence of evidence to the contrary, we ordinarily assume that the legislature uses terms in related statutes consistently. *See, e.g.*, *Pete's Mountain Homeowners v. Ore. Water Resources*, 236 Or App 507, 518, 238 P3d 395 (2010) ("It is a longstanding principle of statutory construction that words may be assumed to be used consistently throughout a statute.").

In a related vein, we observe that, as amended in 1989, ORS 138.040 and ORS 138.050 authorize a defendant to appeal a "disposition" instead of a "sentence." ORS 138.053(1) then specifies the five types of "dispositions" that are appealable. The first two of the five types of appealable dispositions are the imposition of a sentence, ORS 138.053(1)(a), and the suspension of the imposition of any part of a sentence, ORS 138.053(1)(b). The latter three types of appealable dispositions concern imposing conditions of probation, ORS 138.053(1)(c), extending a period of probation, ORS 138.053(1)(d), or imposing a sentence upon revocation of probation, ORS 138.053(1)(e). On an appeal of a disposition of the first two types, the scope of the appellate court's review authority is limited to whether the disposition "[e]xceeds the maximum allowable by law" or "[i]s unconstitutionally cruel and unusual." ORS 138.050(3).

But, on an appeal of a disposition of the latter three types, *"[n]otwithstanding ORS 138.040 and [ORS] 138.050*," the appellate court may review more broadly for any "colorable claim of error in the proceeding from which the appeal is taken." ORS 138.053(3) (emphasis added). If defendant were correct that a disposition "exceeds the maximum allowable by law" because of any error in the proceeding in which the disposition was imposed, then the expanded review authority that is specified

37

in ORS 138.053(3) becomes surplusage, as the appellate court would already possess such authority under ORS 138.050. Indeed, defendant's proposed reading of the statute makes the introductory phrase, "[n]otwithstanding ORS 138.040 and [ORS] 138.050" meaningless.

c.     Prior Judicial Construction

Our analysis of ORS 138.050(1)(a) is also informed by this court's prior construction of that statute or its predecessors. *Blacknall v. Board of Parole*, 348 Or 131, 141-42, 229 P3d 595 (2010) ("As context, those [prior] cases may illuminate or explain the meaning of the statutory text."); *Mastriano v. Board of Parole*, 342 Or 684, 693, 159 P3d 1151 (2007) ("[W]e generally presume that the legislature enacts statutes in light of existing judicial decisions that have a direct bearing on those statutes.").

As our account of the historical development of the statute reveals, for many years, this court has interpreted references to court authority to review sentences for excessiveness in relation to a "maximum" as referring to the limited question whether the sentence falls within the range allowed by statute. In this court's 1945 decision in *Ridder*, for example, this court explained that, under the predecessor to ORS 138.050 -- which authorized appeal of a judgment imposing a sentence that imposes "excessive, cruel or unusual punishment" -- the only cognizable nonconstitutional challenge to a sentence was whether the sentence was within the minimum and maximum terms of imprisonment prescribed by statute. 185 Or at 138.

More to the point, however, is this court's more recent decision in *Loyer*. In that case, the defendant appealed following the entry of judgment on a guilty plea,

38

arguing that the trial court erred in imposing a sentence without following proper procedures in violation of, among other things, state and federal constitutional confrontation guarantees and the Due Process Clause. This court concluded that the 1985 amendments to ORS 138.050 that introduced the phrasing at issue in this case "narrows considerably our scope of review" and precludes the sort of challenge that the defendant in that case advanced. *Loyer*, 303 Or at 616.

In this case, defendant makes no effort to distinguish *Loyer*. In fact, defendant does not mention *Loyer*, either in his briefing to this court or in his brief to the Court of Appeals. Instead, he points to other cases in which he contends this court entertained constitutional challenges to sentences on grounds other than that the sentences were cruel and unusual on appeals that he asserts were filed under the parallel provisions of ORS 138.040. Defendant reasons that, given that the wording of ORS 138.040 and ORS 138.050 is identical in all relevant respects, we should construe both provisions to permit appeals predicated on any constitutional challenges to sentences, not just challenges that the sentences are cruel and unusual. In support of his contention, he cites this court's decisions in *State v. Sanders*, 343 Or 35, 163 P3d 607 (2007), and *State v. Dilts*, 337 Or 645, 103 P3d 95 (2004), as well as its earlier decision in *State v. Wedge*, 293 Or 598, 652 P2d 773 (1982).

Defendant's reliance on *Sanders* and *Dilts* is wholly misplaced. Both involved appeals of judgments of convictions for felonies committed after the 1989 amendments, when the sentencing guidelines for such offenses were adopted. As we have explained, appeal and review of dispositions under the sentencing guidelines is

39

governed by ORS 138.222(4), which expressly states that, "[n]otwithstanding ORS 138.040 and ORS 138.050," review of a sentence imposed on a judgment of conviction for a felony committed after November 1, 1989, is much broader and includes authority to review contentions that "[t]he sentencing court failed to comply with the requirements of law in imposing or failing to impose a sentence." *See State v. Hart*, 329 Or 140, 144 n 2, 985 P2d 1260 (1999) ("[S]entences * * * imposed for felony convictions after November 1, 1989, are subject to review under ORS 138.222," not ORS 138.040.).

*Wedge*, likewise, does not advance defendant's cause. That case was decided under the broader 1977 version of ORS 138.040, before the legislature adopted the phrasing that is at issue in this case.

3. *Legislative History*

There remain the parties' arguments about the legislative history. Defendant places great reliance on the legislative history of the 1985 amendments to ORS 138.040 and ORS 138.050 -- in particular, the testimony of Judge Gillette to the effect that the amended statutes would permit review of all constitutional challenges to a sentence, not just that the sentence is cruel and unusual. The state, for its part, relies heavily on the legislative history of the 1989 amendments to those statutes -- in particular, the legislature's explicit rejection of a proposed amendment to allow precisely the kind of constitutional challenge that defendant is attempting to assert in this case.

We begin with the 1985 legislative history. There is no question but that defendant correctly characterizes Judge Gillette's testimony, or, at least, part of it. The problem is that, as we have noted, there is also legislative history to the contrary. To

40

begin with, Judge Gillette himself testified on other occasions that the proposed amendments would have a different effect. He explained to the House Committee on Judiciary, for example, that the 1985 amendments were intended "to have the law stay with [what the] present practice is before the Court of Appeals." Chief Judge Joseph similarly explained that the same bill restricted the appealability of sentences to challenges requiring appellate courts to review whether the sentence was unconstitutionally cruel and unusual or was "within statutory limits." In a similar vein, Senator Fadeley raised a caution that the bill itself might be unconstitutional precisely because it limited constitutional challenges to those asserting that a sentence is cruel and unusual. Another legislator asked Chief Judge Joseph whether the statute was, in fact, so limited, and the Chief Judge replied, "That is correct."

Not surprisingly, defendant seizes on the bit of legislative history that advances his cause, and the state does likewise. The fact of the matter, however, is that the legislative history of the 1985 amendments provides a little something for everyone and does not clearly resolve the matter one way or the other.

We turn, then to the legislative history of the 1989 amendments. As we have noted, during hearings before the Senate Judiciary Committee on amendments to ORS 138.040 and ORS 138.050, Senator Dick Springer introduced a proposed amendment to those statutes in response to concerns expressed by the ACLU that the current law limits constitutional challenges to those that a sentence is cruel and unusual. Springer's amendment would have eliminated that limitation by deleting the reference to "cruel and unusual punishment" and expressly allowing constitutional challenges of any

41

sort. Chief Judge Joseph opposed the amendment, arguing that it represented an attempt to "broaden the scope of review in some mysterious way, presumably to avoid the present limitation." The committee apparently agreed and rejected the amendment.

Defendant insists that the 1989 legislative history -- especially the failed amendment -- is irrelevant, because it merely represents the views that later legislators expressed about the meaning of legislation adopted during an earlier session. In the alternative, defendant suggests that the proposed amendment actually amounted to an attempt merely to reintroduce *nonconstitutional* proportionality review of sentencing, as the statutes permitted before the 1985 amendments.

Defendant's characterization of the 1989 legislative history is inaccurate. As our earlier discussion of it makes clear, the ACLU's own characterization of the proposed amendment, as well as the justification for it, was that current law limited constitutional claims to ones asserting that a sentence is cruel and unusual. The representative of the ACLU stated unequivocally that, in proposing the amendment, "we are primarily concerned with the state constitution," specifically, the bill of rights. Moreover, during Senate Judiciary Committee deliberations on the proposed amendment, members of the committee expressly discussed whether the law should be amended to permit challenges on broader constitutional grounds to include, among other things, challenges brought under the Due Process Clause.

That said, the significance of the 1989 legislative history is debatable. This court has stated that subsequent legislative history is irrelevant, *see, e.g.*, *Hilton v. MVD*, 308 Or 150, 156, 775 P2d 1378 (1989) ("[A] later legislature's failure to change a

42

previously-enacted statute is not part of the legislative history of that statute * * *."), although, on other occasions, the court has been less categorically dismissive. *See, e.g.*, *Harris v. Board of Parole*, 288 Or 495, 501-02, 605 P2d 1181 (1980) (consulting later legislative history to determine whether the legislature's failure to enact legislation in response to a Supreme Court decision was intended to signal legislative agreement with the decision). In this case, the 1989 legislative history, at best, arguably confirms what we have determined to be the intended meaning of ORS 138.050(1)(a) based on its text, context, and earlier enactment history. Accordingly, we need not address the weight, if any, to which the 1989 legislative history is entitled in this case.

III. CONCLUSION

The foregoing analysis makes clear that, although defendant's proposed reading of ORS 138.050(1)(a) to permit an appeal of a criminal judgment following a no contest or guilty plea to challenge a sentence on Due Process grounds may be a plausible reading of the bare wording of that statute, it is ultimately untenable when other indicia of legislative intent are taken into account. Specifically, adopting defendant's reading of the statute would introduce unnecessary redundancy into ORS 138.050(1) itself, would render meaningless significant portions of ORS 138.053, would contradict a century of sentencing legislation and related case law that consistently refers to "maximum" sentences in terms of *statutory* maximums, and would directly contradict this court's opinion in *Loyer*. We conclude that the reference to a disposition that "[e]xceeds the maximum allowable by law" in ORS 138.050(1)(a) does not refer to a sentence that was imposed by means of procedures that violate the Due Process Clause of the federal

43

constitution. To the contrary, it refers to a disposition that exceeds a maximum expressed by means of legislation, not the state or federal constitution.

Returning to the facts of this case, the result is apparent. The trial court imposed a fine of $1,100. Defendant concedes that the amount is less than the statutory maximum that could have been imposed for the crime for which he was convicted. Thus, the Court of Appeals lacks jurisdiction under ORS 138.050(1)(a). As in *Loyer*, defendant's claim of error in this case must be left to possible post-conviction relief. 303 Or at 617. We therefore do not reach the merits of defendant's contention that the trial court in imposing the additional fine essentially punished him for exercising his statutory right to plead no contest, and our opinion should not be understood to constitute implicit approval of what the trial court did.

The order of the Court of Appeals is reversed, and the case is remanded to the Court of Appeals for entry of an order dismissing the appeal.