544　　　　　　　　June 22, 2017　　　　　　　No. 32

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Respondent on Review*,

*v.*

ROGER ROBERT FEBUARY,
*Petitioner on Review.*

(CC 080982; CA A154662; SC S063867)

En Banc

On review from the Court of Appeals.*

Argued and submitted January 12, 2017.

David O. Ferry, Deputy Public Defender, Salem, argued the cause and filed the brief for the petitioner on review. Also on the brief was Ernest G. Lannet, Chief Defender, Office of Public Defense Services.

Jonathan N. Schildt, Assistant Attorney General, Salem, argued the cause and filed the brief for the respondent on review. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

BALMER, C.J.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

_____

* Appeal from Lincoln County Circuit Court, Thomas O. Bradford, Judge. 274 Or App 820, 361 P3d 661 (2015).

**BALMER, C. J.**

The prophylactic rule of *State v. Partain*, 349 Or 10, 239 P3d 232 (2010), protects against vindictiveness in the resentencing of a criminal offender after a successful appeal. *Partain*, in turn, was based on *North Carolina v. Pearce*, 395 US 711, 89 S Ct 2072, 23 L Ed 2d 656 (1969), where the United States Supreme Court held that due process "requires that vindictiveness against a defendant for having successfully attacked [a] first conviction must play no part in the sentence [the defendant] receives after a new trial." *Id.* at 725. In this case, the specific issue is how *Partain* and *Pearce* apply if an offender's total sentence has decreased after resentencing, but a sentence imposed for one of several individual counts has increased. A separate and preliminary issue is whether this court and the Court of Appeals have jurisdiction to hear this case and review defendant's claims. We conclude that the appellate courts have jurisdiction to consider defendant's appeal. On the merits, we conclude that defendant's sentence does not violate the rule against vindictiveness.

## I.   FACTUAL BACKGROUND

A jury found defendant guilty of five crimes relating to an incident where defendant provided a minor with alcohol and sexually abused her. Defendant was convicted and sentenced as follows: two terms of 75 months' imprisonment for two counts of sexual abuse in the first degree, ORS 163.427; 20 months' imprisonment for one count of attempted sodomy in the second degree, ORS 163.395; 60 months' probation for one count of providing alcohol to a person under 21 years of age, ORS 471.410(2); and 60 months' probation for one count of sexual harassment, ORS 166.065(4)(a). The sentencing court ordered that the three prison terms run consecutively and that the probation terms run concurrently. In total, defendant was sentenced to 170 months' imprisonment and 60 months' probation. Defendant appealed and the Court of Appeals reversed because of evidentiary error at trial. *State v. Febuary*, 253 Or App 658, 666, 292 P3d 604 (2012) (*Febuary I*).

On remand, defendant made a plea bargain with the state. Defendant pled guilty to one count of sexual abuse

in the first degree and one count of providing alcohol to a person under 21. The state dismissed the remaining three charges. The state asked for a sentence of 12 months on the providing alcohol conviction, on which the defendant originally had received only probation. Defendant argued that imposing any sentence of imprisonment on the providing alcohol count was vindictive and would violate his due process rights under *Pearce*.

After hearing arguments, the court sentenced defendant to 75 months' imprisonment on the sexual abuse count and 12 months' imprisonment on the providing alcohol count, to run consecutively. As a result, his final sentence was 87 months in prison. The judge stated that he had a "non-vindictive reason" for changing the sentence on the providing alcohol count: the nature of defendant's crime, which he described as "malicious" and "profoundly offensive." The judge explained that defendant's crime was not "just a matter of leaving a jug of whiskey on the coffee table for a child to use while they're watching television." Rather, defendant provided alcohol to a minor "to facilitate the commission of sex abuse in the first degree." The judge further stated that his previous decision to impose a sentence of probation for the providing alcohol conviction occurred in the context of the "overall [sentencing] scheme," *i.e.*, defendant's otherwise total sentence of 170 months' imprisonment. At resentencing, however, the single other count carried a sentence of 75 months. The judge explained that the shorter total sentence motivated his decision to change the sentence on the misdemeanor from probation to 12 months' imprisonment.

Defendant again appealed, arguing that the increased sentence on the providing alcohol count was prohibited under *Pearce* and violated his due process rights. Defendant did not assert that the sentence violated any other statutory or constitutional limits. The Court of Appeals identified the issue as "the precise standard for measuring whether a new sentence triggers the presumption of vindictiveness," which, it observed, "since the issuance of *Pearce*, 'has been the subject of some confusion.'" *State v. Febuary*, 274 Or App 820, 826, 361 P3d 661 (2015) (*Febuary II*) (quoting *United States v. Campbell*, 106 F3d 64, 67 (5th Cir 1997)). The court noted that the federal courts of appeals have split

in their resolution of that issue, with a majority of circuits applying the "aggregate approach," which looks at whether an offender's total sentence has increased following a successful appeal and resentencing to apply the rule of *Pearce*. *Id.* A minority of circuits employ the "remainder aggregate" approach, which applies the rule of *Pearce* when "the new sentence on the remaining counts exceeds the original sentence on those counts."[1] *Id.* (quoting *Campbell*, 106 F3d at 68).

The court then analyzed our decision in *Partain* and concluded that, in that case, this court did not consider "the length or nature of the individual sentences that had been imposed by the trial court, but only the length of the total sentences that had been imposed." *Id.* at 829. Here, because the length of the total sentence decreased, the court concluded that a presumption of vindictiveness did not apply and affirmed the trial court. *Id.* at 832.

Defendant petitioned for review, and we allowed the petition. After we allowed the petition, the state filed a motion to determine jurisdiction, contending that neither the Court of Appeals nor this court had appellate jurisdiction over the case. We instructed the parties to address that issue at oral argument.

## II.  JURISDICTION

The jurisdictional issue in this case is whether an appellate court may review a defendant's due process

---

[1] In justifying its conclusion, the Court of Appeals stated, "We note, in particular, that the United States Court of Appeals for the Ninth Circuit has adopted the 'aggregate package' approach. Although we are not bound by the decision of the United States Court of Appeals for the Ninth Circuit, 'Oregon courts often give particular weight to those decisions because Oregon lies in that circuit.'" *Febuary II*, 274 Or App at 830-31 (citation omitted; quoting *Miller v. Pacific Trawlers, Inc.*, 204 Or App 585, 612 n 23, 131 P3d 821 (2006)). That assertion is incorrect. The persuasive authority of the Ninth Circuit on Oregon courts on general principles of federal law flows only from the strength of its reasoning; the Ninth Circuit's geographic boundaries are irrelevant. This court has stated, "As to the meaning of the federal Constitution and laws, to which 'the judges in every state shall be bound,' US Const, Art VI, cl 2, we are bound only by the interpretations given those laws by the Supreme Court of the United States." *State v. Moyle*, 299 Or 691, 707, 705 P2d 740 (1985). And although this court and the Court of Appeals "ordinarily *** respect the decisions of lower federal courts on issues of federal law," *id.*, neither this court nor the Court of Appeals are bound by them. *State v. Reyes-Camarena*, 330 Or 431, 436 n 2, 7 P3d 522 (2000).

challenge to a misdemeanor sentence in a case where the defendant was sentenced on both misdemeanor and felony convictions, and the defendant pleaded guilty. The state argues that because defendant is challenging the increased sentence on his misdemeanor conviction for providing alcohol to a minor, his appeal is governed by ORS 138.040 and ORS 138.050, and those statutes do not permit an appeal in the circumstances present here. Responding to defendant's claim that ORS 138.222 confers jurisdiction here, the state argues that ORS 138.222 applies to the appeal and review of felonies only, and does not confer appellate jurisdiction over defendant's case because defendant seeks review of his misdemeanor sentence and not his felony sentence. Defendant asserts that ORS 138.222 confers jurisdiction here regardless of the particular arguments that he makes on appeal. We agree with defendant and conclude that ORS 138.222 confers appellate jurisdiction over this case.

We begin with basic principles: A criminal defendant does not have an inherent right to appeal; he or she must appeal pursuant to some statute authorizing the appeal and granting the appellate court jurisdiction. *State v. Cloutier*, 351 Or 68, 74, 261 P3d 1234 (2011). Furthermore, the ability of a party to appeal a case, and of a court to hear it, is distinct from reviewability. *State v. Montgomery*, 294 Or 417, 420, 657 P2d 668 (1983). "Appealability generally is concerned with whether an appeal can be taken at all. Usually, but not always, appeals lie only from final judgments and orders. Reviewability generally involves the consideration of a variety of rulings and orders made by the court, usually before judgment." *Id.* (emphasis omitted). Therefore, we must conclude both that the judgment is appealable and that the claim defendant raises is reviewable.

Our analysis in *Cloutier* of the statutes that allow for appeals of criminal convictions is helpful. In that case, we explained that two statutes governing criminal appeals, ORS 138.040 and ORS 138.050, do not govern appeal and review in all criminal appeals, even though the text of those provisions might suggest as much. 351 Or at 90. Rather, those statutes must be read together with later-enacted ORS 138.222. ORS 138.222(7) "begins by authorizing appeals of judgments of conviction based on a sentence for felonies

committed on or after November 1, 1989." *Cloutier*, 351 Or at 90. ORS 138.222(1) provides, "Notwithstanding the provisions of ORS 138.040 and 138.050, a sentence imposed for a judgment of conviction entered for a felony *** may be reviewed only as provided by this section." Based on those provisions, we concluded that ORS 138.222 governed appeal and review of sentences for felonies and therefore "ORS 138.040 and ORS 138.050 *** apply only to appeal and review of sentences for misdemeanor offenses." *Cloutier*, 351 Or at 91.

What *Cloutier* did not address, and what we must address in this case, is how appeal and review work in cases such as this, which include both felony and misdemeanor convictions and sentences. Appeals are generally taken from "final judgments and orders," not sentences. *Montgomery*, 294 Or at 420; *see also* ORS 138.053 (describing appealable orders and judgments in criminal cases). Here, a single judgment contains convictions and sentences for both a misdemeanor and a felony, so the question is whether ORS 138.222 or ORS 138.050 governs the appeal and review.

Other provisions of ORS 138.222 provide for appellate jurisdiction and define the scope of review under that section:

"(4)   In any appeal, the appellate court may review a claim that:

"(a)   The sentencing court failed to comply with requirements of law in imposing or failing to impose a sentence;

"*****

"(7)   Either the state or the defendant may appeal a judgment of conviction based on the sentence for a felony ***."

We interpret ORS 138.222 in light of the text, context, and legislative history. *State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009). Our consideration of context includes the structure of the statute as a whole. *See Wetherell v. Douglas County*, 342 Or 666, 678, 160 P3d 614 (2007) ("This court does not look at one subsection of a statute in a vacuum; rather, we construe each part together with the other parts

in an attempt to produce a harmonious whole." (Internal quotation omitted.)).

Both parties struggle to present a persuasive interpretation of the text in subsection (7)—"[a party] may appeal a judgment of conviction based on the sentence for a felony." That phrase presents an immediate ambiguity: what does the term "based on the sentence for a felony" modify? Defendant contends that the term modifies "judgment of conviction," so that the word "judgment" in ORS 138.222(7) means a judgment containing a felony conviction. But defendant does not explain why the legislature would use such a strange construction ("judgment of conviction based on the sentence for a felony") to describe a concept that it describes clearly in other places. *See, e.g.*, ORS 138.222(1) ("judgment of conviction entered for a felony"). Moreover, a judgment of conviction is not, within the ordinary understanding of that phrase, something that can be "based on the sentence." Rather, the obverse is true: A sentence is based on a conviction. The state argues that "based on the sentence for a felony" modifies "appeal" and operates as a limit on reviewability, therefore barring defendant's claims regarding his misdemeanor sentence. But that also is an unusual construction. The meaning of the words in isolation is not clear.

The structure of ORS 138.222 reveals an answer. Subsections (1) through (4) address reviewability, subsections (5) and (6) address appellate court procedure, and subsection (7) addresses appealability. *See Cloutier*, 351 Or at 90-91 (identifying ORS 138.222(1) to (4) as "specif[ying] the scope of review" and subsection (7) as "authorizing" the appeal of certain judgments); *State v. Nix*, 356 Or 768, 775-76, 345 P3d 416 (2015) (same). The state's proposed construction would have subsection (7) containing a grant of appealability *and* a limitation on reviewability. We think that it is unlikely that the legislature would describe with specificity the scope of review in subsections (1), (2), (3), and (4)—and then add to that definition an at-best ambiguous phrase in subsection (7), a subsection that otherwise addresses appealability. We think the phrase in subsection (7), "based on the sentence," is more likely to be a reminder that ORS 138.222 as a whole concerns the review of sentences, and not review of other issues. *See Cloutier*, 351 Or

at 97 ("Redundancy in communication is a fact of life and of law.").

ORS 138.222 also contains a significant clue as to what the legislature intended in cases that involve multiple convictions. ORS 138.222(5)(a) indicates that if an appellate court determines that a sentencing error has been committed that requires resentencing, "the appellate court shall remand *the entire case* for resentencing[,]" and on remand, the sentencing court "may impose a new sentence for *any* conviction in the remanded case." (Emphasis added.) Nothing in that provision indicates that misdemeanor sentences are not part of "the entire case," as that phrase is used in ORS 138.222(5)(a). Similarly, ORS 138.222(5)(b) confirms that the legislature contemplated that the appeal of a judgment containing convictions for felonies and misdemeanors be heard under that section, as it states that a reviewing court must follow certain procedures "in a case involving multiple counts of which at least one is a felony." We conclude that "[a party] may appeal a judgment of conviction based on the sentence for a felony" means that a judgment appealable under ORS 138.222(7) must contain at least one felony conviction and may contain one or more misdemeanor convictions.

That conclusion is consistent with our earlier interpretation of the statute in *Cloutier*. There, we described ORS 138.222 as "govern[ing]" the "appeal and review of sentences imposed for felonies." *Cloutier*, 351 Or at 91. By comparison, as noted, *Cloutier* described ORS 138.040 and ORS 138.050 as applying "*only* to appeal and review of sentences for misdemeanor offenses." *Id.* (emphasis added). The omission of that word of exclusivity in describing ORS 138.222 as "govern[ing]" felony appeals, allows for the possibility that ORS 138.222 also applies to misdemeanor convictions that are included in judgments containing felony convictions. *Id.* *Cloutier* thus implied the conclusion we arrive at here.

In sum, we interpret subsection (7), subject to the other conditions identified in that subsection, to allow the state or a defendant to appeal a judgment containing one or more convictions for a felony, and to appeal a judgment that includes one or more convictions for a felony and one more

convictions for a misdemeanor. Those cases may be reviewed as provided in ORS 138.222(1) - (4).

Applying the foregoing to this case, defendant's judgment of conviction contains two counts: sexual abuse in the first degree, a felony; and furnishing alcohol to a person under 21, a misdemeanor. Because the judgment contains a conviction for a felony, defendant may appeal from the judgment under ORS 138.222(7). That provision establishes the jurisdiction of this court and the Court of Appeals to hear defendant's case. Defendant challenges his sentence for violating his due process rights. That argument is a "claim that *** [t]he sentencing court failed to comply with requirements of law in imposing" a sentence, so ORS 138.222(4)(a) grants appellate courts the power to review defendant's claim. Reviewability is thus also established.

ORS 138.222 confers on the appellate courts jurisdiction to hear this case and review defendant's claims, and we therefore deny the state's motion to dismiss for lack of jurisdiction.

### III.   CONSTITUTIONAL ARGUMENTS

A.   State v. Partain

We begin our discussion of defendant's constitutional arguments with *Partain*, where this court addressed "the possibility that trial courts may employ their sentencing authority to punish defendants for having the temerity to appeal earlier convictions and sentences." 349 Or at 17. In that case, the defendant was originally convicted of 12 sex crimes and sentenced to 420 months in prison. *Id.* at 12. On appeal, the Court of Appeals vacated the sentences on four counts of conviction and remanded the entire case for resentencing. *Id.* On remand, the trial court imposed sentences on the remaining eight counts that totaled 600 months' imprisonment. *Id.* "The court did not state any reasons for imposing the lengthier overall sentence" and there was no new information present in the record. *Id.* The defendant appealed again, this time challenging the lengthier sentence as incompatible with this court's decision in *State v. Turner*, 247 Or 301, 429 P2d 565 (1967), which prohibited trial courts from imposing a harsher sentence

on retrial after a defendant successfully appealed an initial conviction.

In considering the *Partain* defendant's challenge, this court concluded that legislative changes to certain sentencing statutes had "undermine[d] the essential premise for the holding in *Turner.*" *Partain*, 349 Or at 22. Abandoning *Turner*, the court looked for a source of law to address the possibility of vindictiveness playing a role in the resentencing of a defendant following a successful appeal of a conviction. Finding that no part of the Oregon Constitution "answers the question directly," the court turned to the guarantees of the due process clause, as analyzed in *Pearce*, as protecting defendants' rights in that regard. *Partain*, 349 Or at 23. Oregon courts were, of course, already bound by *Pearce*; in *Partain* this court reaffirmed that obligation and determined that neither the Oregon Constitution nor Oregon statutes required more than the federal rule. The *Partain* court stated the rule of *Pearce*:

> "If an Oregon trial judge believes that an offender whom the judge is about to resentence should receive a more severe sentence than the one originally imposed, the judge's reasons must affirmatively appear on the record. Those reasons must be based on identified facts of which the first sentencing judge was unaware, and must be such as to satisfy a reviewing court that the length of the sentence imposed is not a product of vindictiveness toward the offender. Absent such facts and reasons, an unexplained or inadequately explained increased sentence will be presumed to be based on vindictive motives, and will be reversed."

*Partain*, 349 Or at 25-26.

This case presents the question of how to apply that rule in a case with multiple counts of conviction. Neither this court in *Partain* nor the Supreme Court in *Pearce* or later cases has squarely addressed that issue. As the Supreme Court is the "final arbiter of federal constitutional requirements," it is our task here to "determine how that Court would decide" this case. *State v. Williams*, 357 Or 1, 16, 346 P3d 455 (2015). To do so, we turn to *Pearce* and its progeny to better understand the constitutional issues. We then consider what rule should be applied in the circumstances

here that would be faithful to the constitutional rules and concerns present in the Supreme Court's decisions. Finally, we will apply that rule to the facts of this case.

B.   North Carolina v. Pearce *and its progeny*

In *Pearce*, the defendant was convicted of a single offense and sentenced to a term of imprisonment. 395 US at 713. He appealed his conviction and obtained its reversal and an order for a new trial. *Id.* He was convicted again and sentenced to a prison term longer than his original sentence. *Id.* The defendant sought post-conviction relief, challenging the longer sentence. *Id.* The United States Supreme Court concluded that "penalizing" the defendant at his new trial "for having successfully pursued a statutory right of appeal or collateral remedy" violated due process. *Id.* at 724 (internal quotation omitted). The Court articulated two related but separate rules to safeguard defendants' due process rights. First, it held "that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial." *Id.* at 725. And second, it held that "a defendant [must] be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge." *Id.* The Court noted that even the threat of vindictiveness in sentencing might "chill the exercise of basic constitutional rights," *id.* at 724 (quoting *United States v. Jackson*, 390 US 570, 582, 88 S Ct 1209, 20 L Ed 2d 138 (1968)), so the Court created a so-called "prophylactic rule": A reviewing court would "presume" a "more severe" second sentence to be vindictive and would invalidate it unless the resentencing judge identified "objective information in the record justifying the increased sentence." *United States v. Goodwin*, 457 US 368, 373-74 & n5, 102 S Ct 2485, 73 L Ed 2d 74 (1982) (citing *Pearce*, 395 US at 726).

In *Pearce*, "[b]eyond doubt, vindictiveness of a sentencing judge is the evil the Court sought to prevent." *Texas v. McCullough*, 475 US 134, 138, 106 S Ct 976, 89 L Ed 2d 104 (1986). Understanding what is meant by "vindictiveness," then, is an essential step in determining if it is present in this case. The Court in *Pearce* emphasized that the core due process concern is to avoid "penalizing" defendants

who chose to exercise their right to appeal. *Pearce*, 395 US at 724 (quoting *Jackson*, 390 US at 581); *see also Bordenkircher v. Hayes*, 434 US 357, 363, 98 S Ct 663, 54 L Ed2d 604 (1978) ("To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort."). But a prominent purpose of the criminal justice system is to punish offenders, so "[t]he presence of a punitive motivation, therefore, does not provide an adequate basis for distinguishing" legitimate punishment from vindictive punishment. *Goodwin*, 457 US at 372-73. Rather than a punitive motive, the touchstone for vindictiveness in sentencing is the presence of an "improper motive." *Id*. The Court has suggested a number of possible improper motives: "punishing [a] defendant for his having succeeded in getting his original conviction set aside," *Pearce*, 395 US at 723-24; enforcing the "institutional bias inherent in the judicial system against the retrial of issues that have already been decided," *Goodwin*, 457 US at 376; engaging in "self-vindication," *McCullough*, 475 US at 139 (quoting *Chaffin v. Stynchcombe*, 412 US 17, 27, 93 S Ct 1977, 36 L Ed 2d 714 (1973)); or "discouraging * * * meritless appeals," *Chaffin*, 412 US at 27.[2]

   The presence of an "improper motive" by itself, however, does not constitute a due process violation. The improper motive must also have affected the proceedings in some way. The Court has stated that, to violate due process, the improper motive must lead to a "more severe sentence," *Pearce*, 395 US at 726, and has used similar terms indicating that the improper motive must make the defendant's sentence in some way worse or longer. *See, e.g.*, *Chaffin*, 412 US at 24 (referring to "increased sentences," "higher sentences," and "harsher resentencing"); *Goodwin*, 457 US at 373 (referring to "action detrimental to the defendant"). Indeed, because "[m]otives are complex and difficult to prove," a defendant need not even show that one existed in

---

[2] The Court's treatment of various motives has evolved; the purpose of our recitation here is to provide examples of motives that have been considered improper and not to make a current statement of law. *See, e.g.*, *McCullough*, 475 US at 139 ("[In certain circumstances] there is no justifiable concern about 'institutional interests that might occasion higher sentences by a judge desirous of discouraging what he regards as meritless appeals.'" (Quoting *Chaffin*, 412 US at 27.)).

order to prevail in a *Pearce* challenge. *Goodwin*, 475 US at 373. Rather, the point of *Pearce* was that a reviewing court could presume the existence of an improper motive when there is a "reasonable likelihood" that a defendant's "increase in sentence is the product of actual vindictiveness," that is, the product of an improper motive. *Alabama v. Smith*, 490 US 794, 799, 109 S Ct 2201, 104 L Ed 2d 865 (1989) (internal quotation omitted). That presumption can be overcome if the sentencing judge identified "objective information in the record justifying the increased sentence." *Goodwin*, 457 US at 374.

Whether there is a reasonable likelihood of actual vindictiveness also depends in part on the circumstances of the case and the structure of the particular substantive criminal laws and sentencing parameters in which that case occurred—the "resentencing setting." *See* Wayne R. LaFave, Jerold H. Israel, Nancy J. King, & Orin S. Kerr, 6 *Criminal Procedure* § 26.8(c), 1110 (4th ed 2015) ("The vindictiveness presumption of *Pearce* does not apply to all settings presenting a resentencing following a reversed conviction and subsequent reconviction."). The Supreme Court has examined several ways in which a defendant's particular path through a state's criminal justice system may or may not give rise to a presumption of vindictiveness. *See id.* at 1110-16 (summarizing cases). For example, when a defendant's initial conviction follows a guilty plea and his conviction after appeal follows a jury trial, a presumption of vindictiveness will not apply because "the increase in sentence is not more likely than not attributable to the vindictiveness on the part of the sentencing judge." *Smith*, 490 US at 801.

In sum, the due process violation described in *Pearce* occurs in principle when two elements are present: an "improper motive" that causes a "more severe" second sentence. In practice, even if there is no actual evidence of an improper motive, but the resentencing setting and the greater severity of the new sentence suggest that there is a "reasonable likelihood" of actual vindictiveness, a reviewing court will presume an improper motive and the state must "rebut the presumption that an increased sentence *** resulted from vindictiveness." *Wasman v. United States*, 468

US 559, 569, 104 S Ct 3217, 82 L Ed 2d 424 (1984). A resentencing setting that permits a presumption of improper motive, however, does not violate a defendant's rights unless the judge actually imposed a "more severe sentence upon [the] defendant after a new trial." *Pearce*, 395 US at 726. If a defendant is unable to establish the presumption of improper motive, the defendant always may show a due process violation by "affirmatively prov[ing] actual vindictiveness," *Wasman*, 468 US at 569, with proof that an improper motive caused the "more severe" subsequent sentence, such as statements by the judge demonstrating actual vindictiveness.

With that understanding of the *Pearce* rule, we turn to the defendant's arguments as to how the resentencing in his case violates that rule. Regarding the first element, an "improper motive," defendant argues that the resentencing setting gives rise to a presumption of an improper motive because the same judge imposed the first and second sentences. As to the second element, a "more severe sentence," defendant argues that, in multi-count cases like his, a second sentence can be "more severe" and support a *Pearce* violation even if it is shorter than the original sentence. To prevail on his constitutional claim, defendant must establish both elements; ultimately, we conclude that he does not establish either.

C.   *Subconscious psychological effects are not "improper motives."*

Defendant argues that the fact that the same judge imposed his first and second sentences justifies the presumption of an improper motive. He asserts that whenever the same judge resentences a defendant, the judge "holds a previous, self-generated conception of the total appropriate punishment for a defendant" and thus any subsequent harsher sentence should be presumed vindictive. Defendant explains that certain "mental processes," such as "cognitive dissonance," "confirmation bias," and the "anchoring-and-adjustment heuristic," "create a near-ubiquitous human tendency to insufficiently adjust to new information after previously taking a position." Defendant cites a number of psychology studies that purport to establish that those effects cause people, including judges, to "self-vindicate"

prior decisions and to discount the importance of new facts. In the words of one study quoted by defendant, a judge "tends to make the resentencing decision on the basis of personal psychological motivations rather than the merits of the case." James P. Monacell, *An Application of Cognitive Dissonance Theory to Resentencing and Other Reappearances by the Same Judge*, 1 L & Hum Behav 385, 390 (1977).

The state argues that subconscious cognitive biases are not "improper motives" under Supreme Court case law. We agree with the state, for three reasons. First, the influence of subconscious or unconscious biases can be profound, but precisely because they are subconscious or unconscious, those biases lack purpose or intention and therefore do not demonstrate the improper motive that is a necessary part of a *Pearce* due process violation. Second, the psychological research that underlies defendant's arguments existed at the time of Supreme Court decisions in this area, and the Court has demonstrated its awareness of those issues. *See Goodwin*, 457 US at 377 (stating that "subconscious[] motivat[ions]" might be part of a "vindictive *** judicial response" to a defendant's appeal).[3] But the Court has not indicated that those theories justify applying the expansive rule urged by defendant. Indeed, the prophylactic rule first articulated in *Pearce* does not require any inquiry into the reasons (subconscious, conscious, or otherwise) behind a sentencing decision, and so the rule itself provides an avenue for defendants to challenge any sentencing decisions they believe are influenced by subconscious or unconscious cognitive biases. Finally, defendant's argument, if followed to its logical conclusion, conflicts with the fundamental tenet of our justice system that a judge's decisions result from an impartial application of the law to the facts, and are not the result of a particular judge's psychological predilections. The profound implications of defendant's argument caution against its adoption in the absence of compelling

---

[3] For example, defendant cites a "classic study" from 1959, Leon Festinger and James M. Carlsmith, *Cognitive Consequences of Forced Compliance*, 58 J Abnormal and Soc Psychol 203 (1959), and a 1977 law review article addressing the application of psychological theories to the circumstance of judge resentencing, Monacell, 1 L & Hum Behav 385. Those papers predate *Goodwin* (1982), *McCullough* (1986), *Smith* (1989), and other relevant Supreme Court cases.

proof of its pervasiveness. The mere fact that the same judge resentences a defendant is not a basis for a presumption of improper motive.

D.    *In multiple count convictions, a longer aggregate sentence is "more severe."*

Defendant makes a second argument that a presumption of vindictiveness should apply because the mathematical relationship between his first and second sentences demonstrates that his second sentence, though shorter overall, is nonetheless more severe. Defendant proposes that we apply the so-called "remainder aggregate approach" to multi-count cases to determine whether the second sentence is "more severe" and warrants the presumption of vindictiveness. Under the remainder aggregate approach, in cases where a defendant with multiple convictions succeeds in having some of the convictions reversed on appeal, the second sentence is "more severe" when the total sentence on the counts at resentencing exceeds the total sentence on those counts in the original sentence.[4] Defendant asserts that the remainder aggregate approach is legally required by Oregon's "per-offense" sentencing system, "in which each offense must be given a single, appropriate sentence." Defendant suggests that "because trial courts are presumed to follow the law," if a judge on remand adjusts one count's sentence because of the sentences imposed on other counts in the same case, in the absence of new facts to explain the change, a reviewing court must presume an improper vindictive motive. Defendant fails to identify any authority that establishes that point, but he implies that the state's sentencing policies require that result. *See, e.g.*, *Oregon Sentencing Guidelines Implementation Manual* 7 (1989) (stating the "principle that presumptive punishments

---

[4] If a reviewing court applied defendant's proposed remainder aggregate approach to this case, it would identify the counts of conviction in the later proceeding—here, one count of sexual abuse in the first degree and one count of providing alcohol to a person less than 21 years of age—and compare the sentences received for those counts in the initial and subsequent sentencing proceedings. The combined sentence on those two counts at defendant's initial sentencing was 75 months' imprisonment and 60 months' probation; on remand, it was 87 months' imprisonment. As the total sentence on those two counts is longer in the second sentencing, that sentence is more severe under the remainder aggregate approach.

should be based on the seriousness of the crime of conviction and the offender's criminal history").

The state counters that that approach incorrectly conceives of the sentencing process as "mechanical" and "segmented" and ignores the fact that, under the guidelines, "trial courts may consider the total sentence, and the relationship among individual sentences, in arriving at a sentence on each count." *See, e.g.*, ORS 138.222(5)(b) (instructing an appellate court, after reversing one or more counts in a multi-count case, to remand the entire case "for resentencing on the affirmed count or counts"). The proper approach to analyzing multi-count cases at resentencing, the state argues, is the "aggregate package" approach. Under that approach, a reviewing court compares the total length of the initial sentence and subsequent sentence and presumes an improper motive when the aggregate second sentence is longer than the first.[5] The state argues that a judge's consideration of the total sentence length when imposing a sentence on one component count, as occurred here, is appropriate and that the remainder aggregate approach is incorrect.[6]

We agree with the state. A judge has discretion to set the length of a sentence within statutory and constitutional parameters. *State ex rel Huddleston v. Sawyer*, 324 Or 597, 615, 932 P2d 1145, *cert den*, 522 US 994 (1997) ("[C]ourts have inherent power to structure sentences in certain respects" subject to the legislature's "'power to declare what punishment may be assessed.'" (Quoting *State v. Smith*, 128 Or 515, 524, 273 P 323 (1929).)); *see also Apprendi v. New Jersey*, 530 US 466, 481, 120 S Ct 2348,

---

[5] A reviewing court applying the "aggregate package" approach here would compare the total length of defendant's original sentence—170 months' imprisonment and 60 months' probation—with the total length of the new sentence—87 months' imprisonment—and conclude that the second sentence was not "more severe" because the new sentence in aggregate was shorter than the original sentence in aggregate.

[6] In addition to the aggregate package approach and the remainder aggregate approach, there is a third method to comparing sentences in multi-count cases: the count-by-count approach. Under the count-by-count approach, an overall sentence is considered more severe if the sentence on any single count increases on resentencing. Defendant advocated the count-by-count approach in his brief, but abandoned that rule in favor of the remainder aggregate approach at oral argument. We agree with defendant that the count-by-count approach is not warranted and disregard it.

147 L Ed 2d 435 (2000) ("We have often noted that judges in this country have long exercised discretion * * * in imposing sentences *within statutory limits* in the individual case." (Emphasis in original.)); *Wasman*, 468 US at 563 ("It is now well established that a judge or other sentencing authority is to be accorded very wide discretion in determining an appropriate sentence."). Defendant identifies no authority indicating that a judge's "inherent power" and "very wide discretion" in sentencing excludes crafting a "package" sentence in which the length of component counts are set in order to reach a desired total sentence. To the contrary, authorities in a number of other jurisdictions that have affirmed the propriety of allowing judges to "craft sentences on the various counts as part of an overall sentencing scheme." *State v. Hudson*, 293 Ga 656, 660, 748 SE2d 910, 913 (2013); *see also United States v. Handa*, 122 F3d 690, 692 (9th Cir 1997), *cert den*, 522 US 1083 (1998) (adopting a "package" metaphor for sentences in multi-count cases as "reflecting the likelihood that the sentencing judge will have attempted to impose an overall punishment taking into account the nature of the crimes and certain characteristics of the criminal"; collecting similar federal cases); *People v. Johnson*, 2015 CO 70, ¶ 26, 363 P3d 169, 178 (2015) (explaining that the "rationale" supporting the remainder aggregate approach is the assumption that judges craft an "overall sentencing scheme" in multi-count cases).

In Oregon as well, trial courts may assemble sentences on individual counts to form a "package" sentence. *See*, *e.g.*, ORS 138.222(5)(b) (allowing trial judges to re-sentence all convictions in a multi-count case when only some are reversed on appeal). That discretion, of course, is limited to the punishments authorized by statute. ORS 137.010(7) permits a misdemeanant to be punished with a fine, a term of imprisonment, or both; the crime of providing alcohol to a person under the age of 21 years is punishable by a term of imprisonment of up to one year. ORS 471.410(5); ORS 161.615(1). Within those parameters, a trial court has discretion to set an offender's sentence, which may include creating a package sentence.

Once the scope of judicial discretion in setting sentences is clear, there remains no reason to adopt the

remainder aggregate approach as the metric for determining when a resentencing is "more severe." *Pearce*'s animating concern was that criminal defendants might be punished for appealing their sentences, or deterred from doing so by the possibility that a successful appeal might result in a more severe punishment. The impact of a sentence on a defendant, and its likely incentivizing effect on his decision to appeal, is best captured by the aggregate package approach. Defendants' decisions to appeal, after all, are primarily motivated by a desire to reduce their overall time in prison, rather than to redistribute prison time among multiple counts. *See United States v. Horob*, 735 F3d 866, 871 (9th Cir 2013) ("If there is a possibility of a sentence reduction and no risk of a sentence increase, defendants will continue to appeal."). For the purposes of establishing a *Pearce* violation, a sentence is "more severe" when the total length of the second sentence exceeds that of the first, regardless of the counts of conviction.

Defendant makes a third argument that deserves a response. Defendant claims that the "aggregate package" approach to multi-count cases allows a judge to vindictively sentence a defendant as long as the new sentence is less in total than the original. In some cases, as in this one, the reversal of some counts on appeal means that the second sentence cannot exceed the original sentence. In those cases, defendant argues, "the mere fact that the trial court did not do what it could not have done does not logically reduce the likelihood of a vindictive motivation."

We agree with defendant that under the aggregate package approach, there remains at least the possibility of judicial vindictiveness at resentencing. But a "speculative" possibility of vindictiveness does not warrant the application of the prophylactic rule here. *McCullough*, 475 US at 139. Because the rule operates in the absence of proof of actual vindictiveness and "often blocks a legitimate response to criminal conduct," *Wasman*, 468 US at 566 (internal quotation omitted), the Supreme Court has "restricted application of *Pearce* to areas where its 'objectives are thought most efficaciously served.'" *McCullough*, 475 US at 138 (quoting *Stone v. Powell*, 428 US 465, 487, 96 S Ct 3037, 49 L Ed 2d 1067 (1967)); *see also Wasman*, 468 US at 566 ("Because of

its severity, the Court has been chary about extending the *Pearce* presumption of vindictiveness." (Internal quotation omitted.)). Furthermore, even with the attendant possibility of unconstitutional vindictiveness, "[t]he possibility of a higher sentence [is] recognized and accepted as a legitimate concomitant of the retrial process." *Chaffin*, 412 US at 25 (citing *Pearce*, 395 US at 723); *see also Partain*, 349 Or at 26 (holding that "a trial court lawfully may impose a harsher sentence on a defendant after retrial or remand" as long as the court does not do so vindictively). But a defendant in those circumstances is not unprotected. At resentencing, a defendant may ask the judge to explain the reasoning behind the sentencing decision and the explanation, or lack thereof, may be evidence that would indicate actual vindictiveness by showing the judge's improper motive. *Smith*, 490 US at 799-800 (citing *Wasman*, 468 US at 569).[7]

## IV.   CONCLUSION

Defendant argues that his due process rights were violated when the trial judge initially imposed a sentence of 60 months' probation on a misdemeanor conviction and on remand imposed a sentence of 12 months' imprisonment for the same misdemeanor. The sentence was for one conviction out of several that arose out of the same criminal incident. On the other convictions, his initial sentence included 170 months' imprisonment; on remand, his sentence for the single other conviction was 75 months' imprisonment. Defendant asserts that, in increasing the sentence on his misdemeanor conviction, the judge violated the rule against vindictiveness set out in *Pearce* and *Partain*. Defendant argues that a presumption of vindictiveness should apply because there is a "reasonable likelihood" of actual vindictiveness, based on the fact that the same judge imposed the

---

[7] We note that a number of statutes and rules require trial courts, in certain circumstances, to make findings and otherwise explain sentencing decisions, which then may be subject to appellate review. *See, e.g.*, ORS 137.671 (trial court may depart from presumptive felony sentences upon making certain findings); OAR 213-008-0001 to 213-008-0007 (same); ORS 137.123(5) (trial court may impose consecutive rather than concurrent sentence upon making certain findings). We express no opinion about how such statutes and rules relate to the kind of explanation referred to in *Pearce* and *Partain*, but only observe that it is a routine practice in sentencing for trial courts to make findings and offer grounds for exercising their discretion to impose a particular sentence.

initial and subsequent sentences, and the fact that when analyzed under the remainder aggregate approach, defendant's second sentence was "more severe" than the first.

For the reasons discussed above, the mere fact that the same judge presides over an initial and subsequent proceeding does not warrant the presumption of vindictiveness. We also reject defendant's claim that his later sentence was "more severe" because the trial increased the sentence for one of his convictions. Rather, we conclude that the correct approach is to compare the aggregate original sentence to the aggregate sentence on remand. Defendant's initial sentence was 170 months' imprisonment and 60 months' probation, and his subsequent sentence was 87 months' imprisonment. Because defendant's sentence on remand was not "more severe" than his initial sentence, there is no presumption of an improper motive on the part of the trial judge. Defendant presented no other evidence that the trial court acted vindictively or out of an improper motive when sentencing him on remand. The trial judge acted within the requirements of due process and did not violate the *Pearce* rule.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.