**[J-31-2022] [MO: Wecht, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 23 WAP 2021 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Superior Court entered June 25, |
| | : | 2020 at No. 1380 WDA 2018, |
| v. | : | affirming the Order of the Court of |
| | : | Common Pleas of Bedford County |
| | : | entered August 28, 2018 at No. CP- |
| MARK ALLEN PRINKEY, | : | 05-CR-0000242-2007. |
| | : | |
| Appellant | : | SUBMITTED:  February 23, 2022 |

## DISSENTING OPINION

**JUSTICE MUNDY**                                     **DECIDED: JUNE 30, 2022**

The second time Appellant was sentenced, the set of convictions had changed, and the entity alleged to have acted vindictively – here, the prosecution – had to choose between a substantially lower sentence or a substantially higher one.  In my view, the cases in which the Supreme Court has endorsed a presumption of vindictiveness do not encompass this situation.  And without that presumption, Appellant's claim – which, throughout this litigation, has been that the sentence was *per se* vindictive[1] – cannot be deemed an attack on the legality of his sentence so as to avoid the PCRA's waiver rule. *See* 42 Pa.C.S. §9544(b) (providing an issue is waived if the PCRA petitioner could have raised it on direct appeal but failed to do so).

---

[1] *See* Brief in Support of the Defendant's Petition for Post-Conviction Collateral Relief, at 4 (filed Aug. 24, 2018); Concise Statement of Matters Complained of on Appeal Pursuant to Rule 1925, at Issue 1 (filed Oct. 9, 2018); *Commonwealth v. Prinkey*, No. CP-05-CR-0000242-2007, *slip op.* at 4 (C.P. Bedford Aug. 28, 2018); *Commonwealth v. Prinkey*, 2020 WL 3469698, at *2 (Pa. Super. June 25, 2020).

Prior to the underlying events in this matter, Appellant was convicted in 1998 of involuntary deviate sexual intercourse ("IDSI") as a first-degree felony, *see* 18 Pa.C.S. § 3123, and he was sentenced to seven-to-twenty years in prison. Shortly after his release on parole, Appellant took the seven-year-old victim of the present offense into a barn against her will and asked if she had ever kissed a boy. When she answered "no," Appellant got down on his knees and placed his hands on her shoulders. At that point, the victim fled the barn and told her sister and mother. Appellant made certain admissions to law enforcement concerning his intended actions with the young girl, *see* Majority Opinion, *slip op.* at 2, and he was ultimately convicted of attempted IDSI with a child, *see* 18 Pa.C.S. § 3123(b), attempted indecent assault of a person less than 13 years of age, *see id.* § 3126(a)(7), and corruption of minors. *See id.* § 6301; *see also id.* §901 (relating to criminal attempt).

At Appellant's first sentencing, as now, the repeat-sex-offender statute directed that a person convicted of a Megan's Law predicate crime for the second time was to be sentenced to at least 25-to-50 years in prison. *See* 42 Pa.C.S. § 9718.2(a) (2006).[2] These offenses included indecent assault and attempted indecent assault, *see* 42 Pa.C.S. §9795.1(a)(1), (2) (superseded), as well as IDSI. *See id.* § 9795.1(b)(2), (3) (superseded). Because Appellant had previously been convicted of IDSI, he was a two-strike sex offender, thus potentially triggering the mandatory minimum:

> Any person who is convicted in any court of this Commonwealth of an offense set forth in section 9799.14 (relating to sexual offenses and tier system) shall, if at the time of the commission of the current offense the person had previously been convicted of an offense set forth in section 9799.14 . . ., be sentenced to a minimum sentence of at least 25 years of total confinement, notwithstanding any other provision of this title or other statute to the contrary.

---

[2] At that time, the predicate crimes were listed in Section 9751.1 of the Judicial Code, which has since been replaced by Section 9799.14.

42 Pa.C.S. §9718.2(a)(1). The "potentially" qualifier is important because, although the above provision appears to make the sentence mandatory in all cases, other language within Section 9718.2 suggests it is only applicable if the Commonwealth gives notice of its intent to proceed under that provision:

> **(c) Proof at sentencing.**--The provisions of this section shall not be an element of the crime, and notice thereof to the defendant shall not be required prior to conviction, *but reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing.* The applicability of this section shall be determined at sentencing.

*Id.* § 9718.2(c) (emphasis added). As this case shows, the emphasized language above has been understood to mean that the Commonwealth has discretion whether to invoke the provision between conviction and sentencing – and if the Commonwealth does not do so, the provision does not apply.[3] Where the Commonwealth does provide such notice, however, the sentencing court lacks discretion not to apply it. *See id.* § 9718.2(d) ("There shall be no authority in any court to impose on an offender to which this section is applicable any lesser sentence than provided for in subsections (a) and (b) or to place the offender on probation or to suspend sentence.").[4]

As the majority relates, when Appellant initially proceeded to sentencing on the above convictions, the Commonwealth had not provided notice, and thus, the common pleas court imposed an aggregate prison sentence of 10-to-25 years. After the most serious conviction, attempted IDSI with a child (a first-degree felony), was reversed on appeal, two convictions remained: attempted indecent assault, a third-degree felony, and corruption of minors, a first-degree misdemeanor. Because the attempted IDSI conviction

---

[3] The Commonwealth does not presently challenge that understanding.

[4] Subsection (b) indicates that the defendant is to be sentenced to a maximum of twice the mandatory minimum. *See id.* § 9718.2(b).

was nullified based on evidentiary inadequacy, double-jeopardy principles prevented retrial on that count; thus, the Commonwealth recognized it had to proceed to sentencing knowing that, absent the mandatory minimum, Appellant would receive a lower sentence than before. The Commonwealth perceived the maximum possible sentence at that juncture to be seven-to-fourteen years in prison, which was lower than it preferred. Before resentencing occurred, therefore, it filed notice of its intent to proceed under Section 9718.2 so as to invoke the mandatory minimum.

At the resentencing hearing, Appellant expressed his view that imposition of the mandatory minimum at that juncture would violate due process because it was not imposed the first time and it would result in a longer sentence. The Commonwealth's attorney responded by explaining his reasoning as follows:

> Your Honor, mandatories are one of those issues that the legislature often debates, judges debate them. And I think they're actually in a lot of circles frowned upon, because they take the discretion away from a judge. And prosecutors are often chastised for abusing the use of mandatories. So, if a prosecutor exercises discretion to not seek a mandatory in a case, and then the – because, because the guidelines and the charges seem to adequately address the defendant's conduct and history, should the prosecutor then be prohibited from seeking that mandatory later on, if the sentencing scheme has been disturbed?
>
> In other words, the defendant when he was originally convicted was facing 52 years in prison. Judge Howsare could have sentenced him to 26 to 52 years in prison. And the Commonwealth made a recommendation close to that at the time of the original sentencing. However, we left the discretion to the Court to sentence whatever seemed appropriate. And the judge sentenced him to 10 years to 25 years . . .. If we're supposed to exercise these mandatories with discretion, and I believe that we do in my office . . . – should we then be penalized for not seeking them in the first instance, when the circumstances have changed, and changed drastically?
>
> This defendant who was once facing 52 years in jail for the same exact conduct, is now only facing 14 years in jail for that conduct. In other words, the mandatory is so much more necessary than it was in the first instance,

where the judge could have sentenced him up to 52 years. Quite frankly, your Honor, I wish the mandatory was worded so that you had the discretion to sentence up to 25 years, but you don't . . . You either sentence the 50 years or you don't, because of the mandatory. . . . To tell you the truth if the defendant could be sentenced to the ten to twenty years that he was originally sentenced, I think that would be a good sentence. But I can't make that recommendation when the Court can't impose that sentence[.]

This is a man, who . . . was out of jail for a couple months, a couple months before he re-offended. He's a pedophile. He's a sexually violent predator. . . . He has a sincere interest in having sex with children. That's what he is and there's only one way to keep society safe from him and that's to keep him behind bars. And that's why this mandatory is there. So, we had the discretion in the instant case to not seek the mandatory and we didn't. But now we think it's appropriate. It's all the more important now that the offenses are lesser.

N.T., 2/19/14, at 6-8 (some paragraph breaks altered). The court, lacking discretion, imposed the mandatory minimum.

At the hearing on the current PCRA petition, the above was incorporated as representing the Commonwealth's reasons for seeking the mandatory minimum. *See* N.T., 4/21/17, at 30-31. A different attorney was representing the Commonwealth at that time, and the PCRA court offered to continue the hearing so Appellant could call the prosecutor who made the above remarks as a witness and examine him further as to his reasoning. *See id.* at 41. This opportunity may have been of assistance to Appellant because, even where no presumption of vindictiveness is found to exist, a defendant can obtain relief by showing actual vindictiveness in his resentencing. *See Texas v. McCullough*, 475 U.S. 134, 139 (1976). However, Appellant declined the court's offer, opting instead to rely on presumed vindictiveness arising from the increased sentence, which he referred to as "ipso facto" vindictiveness. N.T., 4/21/17, at 42.

After denying the PCRA petition, the common pleas court issued an explanatory opinion in which it quoted the February 2014 reasoning of the prosecutor (above) and

concluded it did not reflect vindictiveness. *See Commonwealth v. Prinkey*, No. CP-05-CR-0000242-2007, *slip op.* at 9 (C.P. Bedford Aug. 28, 2018).

As the majority recognizes, *North Carolina v. Pearce*, 395 U.S. 711 (1969), dealt with a situation where a defendant was granted a new trial on appeal, was reconvicted on the same offense, and was then resentenced to a longer term of incarceration after the second conviction. The Supreme Court recognized that the trial judge

> is not constitutionally precluded . . . from imposing a new sentence, whether greater or less than the original sentence, in the light of events subsequent to the first trial that may have thrown new light upon the defendant's life, health, habits, conduct, and mental and moral propensities. Such information may come to the judge's attention from evidence adduced at the second trial itself, from a new presentence investigation, from the defendant's prison record, or possibly from other sources.

*Id.* at 723 (internal quotation marks and citation omitted). Nevertheless, the Court observed the Fourteenth Amendment's Due Process Clause bars imposition of a harsher sentence if its purpose is to punish the defendant for exercising his appellate rights or to deter other defendants from doing so. *See id.* at 725 ("Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial."). As a prophylactic rule "to assure the absence of such a motivation," the Court held that

> whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding.

*Id.* at 726.

This holding was subsequently limited in *Alabama v. Smith*, 490 U.S. 794 (1989), where the Court ruled that no presumption of vindictiveness arises from a longer sentence imposed after a trial than after a guilty plea that has been vacated on appeal. The Court

articulated several reasons, including that a trial can bring to light new information about the defendant's conduct in committing the crime that was not available in the context of a plea hearing. *See id.* at 801. The Court contrasted that situation with the one in *Pearce*, where the sentencing judge ordinarily "operate[s] in the context of roughly the same sentencing considerations after the second trial as he does after the first," and hence, an unexplained increase in the sentence is presumed to be vindictive. *Id.* at 802.

Post-*Pearce*, the Supreme Court has never expanded upon the circumstances in which a presumption of vindictiveness will arise. *See generally Plumley v. Austin*, 574 U.S. 1127 (2015) (Thomas, J., dissenting from denial of *certiorari*) (describing the *Pearce* presumption as "an anomaly in our law"). It has, however, clarified such a presumption does not come about by virtue of a longer sentence alone, but only in scenarios where there is a "reasonable likelihood that the increase in sentence is the product of actual vindictiveness by the sentencing authority." *Smith*, 490 U.S. at 799 (internal quotation marks and citation omitted). Thus, in *Colten v. Kentucky*, 407 U.S. 104, 116-19 (1972), the Court determined there is no presumption of vindictiveness when a defendant receives a longer sentence after a trial *de novo* in a general criminal court after appealing a conviction from an inferior court; *Chaffin v. Stynchcombe*, 412 U.S. 17 (1973), held no such presumption arose where a second jury, which was not aware of the 15-year sentence meted out by the first jury, imposed a life sentence after a trial eliciting roughly the same facts; and in *Texas v. McCullough*, 475 U.S. 134, 138-39 (1986), the Court found no presumption of vindictiveness where initially the jury sentenced the defendant to 20 years, his request for a new trial was granted, and the judge after the retrial sentenced him to 50 years. In that matter, the sentencing judge expressed that the harsher sentence was based on new information which came to light at the second trial about the defendant's role in the crime and his then-recent release from prison.

These cases all involved assertions of vindictiveness in sentencing as opposed to prosecutorial vindictiveness, which was claimed in *Bordenkircher v. Hayes*, 434 U.S. 357 (1978), where the defendant argued (unsuccessfully) that his due process rights were violated when the prosecutor filed additional, more serious, charges after he refused to plead guilty to a lower charge.[5]  And ordinarily, challenges to longer sentences on the same or fewer charges are couched in terms of "vindictive *sentencing*" or "*judicial* vindictiveness." *See, e.g.*, *McCullough*, 475 U.S. 134 at 139; *id.* at 144 (Brennan, J., concurring); *Colten*, 407 U.S. at 116.  Here, however, although we are dealing with sentencing, the focus is on prosecutorial vindictiveness because the prosecution invoked its statutory authority to eliminate the court's sentencing discretion by filing notice of its intent to proceed under the mandatory-minimum provision. *See* Majority Opinion, *slip op.* at 18 (expressing that the Commonwealth "stripped the sentencing court of its traditional discretionary power over sentencing").  Regardless, the two topics – prosecutorial and judicial vindictiveness – have been addressed almost interchangeably by the Supreme Court insofar as due process is concerned.  Accordingly, the contours of the Court's vindictiveness jurisprudence as it has developed in the context of judicial sentencing applies equally to the present prosecutorial sentencing decision.

Notably, the Supreme Court's decisions do not directly address a situation in which the defendant is sentenced, at the second hearing, on a different set of offenses than at the first hearing.  Here, as the majority develops, one of several convictions was vacated on appeal and Appellant was resentenced on the remaining counts.

---

[5] *See also United States v. Goodwin*, 457 U.S. 368 (1982) (finding no presumption of vindictive charging arose where additional indictments were sought after the defendant exercised his right to a jury trial instead of pleading guilty). *But cf. Blackledge v. Perry*, 417 U.S. 21 (1974) (finding vindictiveness likely where a convicted misdemeanant asserts his right to a trial *de novo* and the prosecutor responds by increasing the charges against him).

There has been debate among appellate tribunals about whether *the same* sentence is permissible on remand on the theory that the resentencing court has discretion to increase the sentence for some of the individual remaining counts. Most reviewing courts have determined this may occur without raising a presumption of vindictiveness under the "aggregate package" theory. The concept is that the original sentencing structure has been disrupted and the resentencing judge has discretion to enlarge some of the individual sentences in light of that new reality. Under the aggregate package approach, "the trial court may reconstruct the sentence in any way necessary to ensure that the punishment fits both the crime and the defendant, as long as the final sentence does not exceed the original sentence." *State v. Wade*, 998 A.2d 1114, 1121 (Conn. 2010) (internal quotation marks and brackets omitted)).

> [W]hen a defendant is found guilty on a multicount indictment, there is a strong likelihood that the . . . court will craft a disposition in which the sentences on the various counts form part of an overall plan. When the conviction on one or more of the component counts is vacated, common sense dictates that the judge should be free to review the efficacy of what remains in light of the original plan, and to reconstruct the sentencing architecture . . . within applicable constitutional and statutory limits, if that appears necessary in order to ensure that the punishment still fits both crime and criminal.

*State v. Johnson*, 111 A.3d 447, 451 (Conn. 2014) (cleaned up).

*United States v. Fowler*, 749 F.3d 1010 (11th Cir. 2014), illustrates the point. The defendant was convicted of witness tampering and using a firearm during a crime of violence – both charges stemming from his murder of a police officer – and he was originally sentenced to life imprisonment on the witness-tampering conviction with a consecutive ten-year sentence on the firearm charge. After he successfully challenged the witness tampering conviction on direct appeal, he was resentenced to life imprisonment on the firearm count. The sentencing court explained its original sentence

"was obviously a package" and it never would have imposed a ten-year sentence on the firearm charge alone. The appellate court held, under the aggregate package theory, that no presumption of vindictiveness arose because the guidelines range recommended a life sentence under the circumstances and the sentencing court's package-sentence explanation adequately supported the penalty.[6]

*Johnson* and *Fowler* demonstrate that, per the aggregate package theory, a greater penalty on resentencing for a given individual count does not necessarily lead to a presumption of vindictiveness. As I read the present record, the logic underlying the aggregate package theory explains how the new sentence in this case came about. The Commonwealth was concerned about the overall sentencing "package" as a legitimate response to Appellant's criminal conduct. If the Commonwealth could have obtained the same or a similar sentence as it did originally, it would have been satisfied with that. *See* N.T., 2/19/14, at 7 (reflecting the prosecutor's statement to the court that "I wish the mandatory was worded so that you had the discretion to sentence up to 25 years, but you don't . . . if the defendant could be sentenced to the ten to twenty years that he was originally sentenced, I think that would be a good sentence"). The Commonwealth was unable to obtain that sentence, and hence, unlike in *Pearce* and *Blackledge*, the government was put to a choice between a much lower or much higher sentence. This does not strike me as the type of scenario in which it is so likely that the prosecution's

---

[6] In addition to most federal appellate courts, a number of state courts have adopted the aggregate package approach. *See State v. Wade*, 998 A.2d 1114, 1127 (Conn. 2010); *State v. Febuary*, 396 P.3d 894, 905-06 (Ore. 2017); *see also Twigg v. State*, 133 A.3d 1125, 1142 (Md. 2016) (listing reported state appellate court decisions, as well as federal decisions). *But see, e.g.*, *United States v. Weingarten*, 713 F.3d 704, 711 (2d Cir. 2013) (using the "remainder aggregate" or "count-by-count" approach, under which appellate courts compare the original aggregate sentence on the non-reversed counts on appeal with the original sentence on those same counts before appeal). *See generally States v. Campbell*, 106 F.3d 64, 67-68 (5th Cir. 1997) (surveying cases and describing the two approaches).

selection of the higher of the two available sentences is motivated by a vindictive purpose that a presumption must be imputed by operation of law.  It may be observed that the Supreme Court's jurisprudence in this arena has been developed based on whether the scenario at hand is one that, as a general matter, lends itself to a likelihood that vindictiveness is at the base of the government's actions:

> Motives are complex and difficult to prove.  As a result, in certain cases in which action detrimental to the defendant has been taken after the exercise of a legal right, the Court has found it necessary to "presume" an improper vindictive motive.  Given the severity of such a presumption, however – which may operate in the absence of any proof of an improper motive and thus may block a legitimate response to criminal conduct – the Court has done so only in cases in which a reasonable likelihood of vindictiveness exists.

*Goodwin*, 457 U.S. at 373.  As noted, I do not see the present scenario as one "in which a reasonable likelihood of vindictiveness exists."  I would therefore find that Appellant's claim is not governed by *Pearce* – and, as such, that his contention does not sound in sentence illegality so as to avoid the PCRA's waiver directive.

Alternatively, to the extent an explanation is needed to rebut a presumption of vindictiveness, *see McCullough*, 475 U.S. at 980 (observing that, even where such a presumption applies, a rational explanation stated on the record can overcome it); *Wasman v. United States*, 468 U.S. 559, 569-70 (1984) (finding the *Pearce* presumption applied but the judge's explanation rebutted it), the Commonwealth expressed at the time of resentencing that it wanted to avoid a result it found unpalatable, namely, that Appellant would be given a sentence significantly lower than that which, in the Commonwealth's judgment, was needed to protect the public.[7]  That being the case, the Commonwealth's reasons *do* "affirmatively appear" as required by *Pearce*.  I agree with the PCRA court's

---

[7] Whether we agree with the Commonwealth's judgment in this respect is immaterial.  The question under the *Pearce* rule concerns the Commonwealth's reasons for seeking a higher sentence, not whether that sentence was actually necessary to protect the public.

conclusion that the Commonwealth's reasoning did not reflect vindictiveness, as there is no suggestion the Commonwealth was motivated by a desire to penalize Appellant for exercising his appellate rights or to chill others from doing so – which is all the Due Process Clause forbids in this context. *See Goodwin*, 457 U.S. at 372 n.4; *Smith*, 490 U.S. at 798. As noted, moreover, Appellant declined the opportunity the court gave him to cross-examine the original prosecuting attorney further on the topic. *See supra* note 1.

The majority criticizes the above analysis, stating it is beyond the scope of this appeal to determine whether the illegal-sentencing claim is meritorious. *See* Majority Op. at 22 n.24. I would note, however, this Court has never held that a mere allegation that one's sentence is illegal is alone sufficient to avoid waiver. Rather, the illegal-sentence claim must at least be *potentially* meritorious. As previously explained, because there is no evidence in the record of actual vindictiveness, Appellant's claim must fall within the scope of the *Pearce* line of cases to raise a presumption of vindictiveness. Without that presumption, Appellant's proposition that his sentence was illegal does not even have potential merit, a circumstance that distinguishes this case from those in which this Court has indicated that, *if the PCRA petitioner's claim is correct*, then the sentence was illegal. *See id.* (citing, *inter alia*, *Commonwealth v. Moore*, 247 A.3d 990, 997 (Pa. 2021)). Thus, my position is based on the claim's classification, not its ultimate merit.

If, for example, a PCRA petitioner stated, without any proof, that a *lower* sentence imposed at resentencing was motivated by vindictiveness (which if true would render the sentence illegal),[8] that type of claim would likewise fail to trigger *Pearce*'s prophylactic rule. As such, it would not escape waiver. The only way to understand the distinction between that scenario and the present one is that the majority is effectively holding that

---

[8] This could occur if the defendant believed the second sentence, although lower than the original, was not sufficiently lower.

the present claim either (a) falls within the scope of the existing *Pearce* rule, or (b) falls within the scope of an expansion of the *Pearce* presumption beyond the limits thus far recognized by the Supreme Court.[9]  I have already explained why I believe the first of these options is false.  As for the second, I acknowledge this Court has concurrent jurisdiction with the federal courts to interpret federal law in new situations.  However, if the Court is indeed rendering an independent interpretation of the Due Process Clause of the Fourteenth Amendment, first, I believe it should say so, and second, I would refrain from expanding the *Pearce* rule absent an issue framed for our review which is more closely tailored to that question, together with advocacy directly targeted to it.

Finally, even accepting the majority's conclusion the *Pearce* presumption applies in the current scenario, it is worth asking the purpose of the remand.  As developed above, the prosecutor stated on the record his reasons for seeking a mandatory minimum

---

[9] From my perspective, the only alternative to these two possibilities is that the majority's holding is that a bare allegation of vindictiveness is sufficient in all circumstances to overcome waiver and invoke merits review.  However, that would make application of the PCRA's waiver directive depend on the use of "magic words," which is generally disfavored in our jurisprudence. *See, e.g.*, *Commonwealth v. Collins*, 957 A.2d 237, 259 (Pa. 2008) (observing that the "mere incantation of magic words of counsel ineffectiveness is insufficient to overcome waiver") (quoting *Commonwealth v. Washington*, 927 A.2d 586, 609 (Pa. 2007)).

By way of rejoinder, the majority clarifies it agrees this situation falls outside those previously recognized by the Supreme Court as giving rise to a presumption of vindictiveness.  It indicates Appellant is nonetheless entitled to merits review because, "[u]nder the law that binds us," he "presents a colorable argument that he is entitled to the presumption of vindictiveness," Majority Op. at 22 n.24, that is, a colorable argument the *Pearce* rule should be extended to this situation.  But if an extension of that rule is necessary for a presumption of vindictiveness to apply, it is difficult to see how the claim can have potential merit under the law that currently binds us.  And if we do not know whether Appellant's vindictiveness claim is valid, *see id.* ("We are not tasked with assessing the accuracy of [Appellant's] vindictiveness claim at this juncture."), it is difficult to discern a basis on which to direct the Superior Court to overlook waiver, *see id.* (remanding for the Superior Court to consider the merits of Appellant's *Pearce* claim).

sentence, Appellant declined the opportunity to expand the factual record associated with his resentencing, and the PCRA court determined the new sentence was not motivated by vindictiveness. Although the question this Court accepted for review was limited in scope, we need not ignore the record in deciding how to rule. The majority's mandate expressly leaves open the possibility of an evidentiary hearing on remand. *See* Majority Op. at 22-23 ("If the Superior Court concludes that the PCRA court's factual determinations are insufficient to permit a decision on the merits, the Superior Court shall remand the matter to the PCRA court to address further Prinkey's challenge to the legality of his sentence under *Pearce*."). If the PCRA court had denied an evidentiary hearing on the factual issue of whether Appellant's higher sentence was motivated by vindictiveness based on the view that that fact was immaterial to Appellant's entitlement to relief, a new evidentiary hearing might be appropriate. But that did not happen. Approving a potential hearing in the PCRA court at this juncture improperly gives Appellant a second bite at the evidentiary apple.

As I would affirm the order of the Superior Court, I respectfully dissent.


Justice Brobson joins this dissenting opinion.