562 October 29, 2025 No. 941

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

CHRISTOPHER BEN SCOTT,
*Defendant-Appellant.*

Washington County Circuit Court
17CR83828, 19CR43394
A179577 (Control), A179578

Erik M. Buchér, Judge.

Argued and submitted September 27, 2024.

Francis C. Gieringer, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Oregon Public Defense Commission.

Carson L. Whitehead, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, Hellman, Judge, and O'Connor, Judge.*

HELLMAN, J.

In Case No. 17CR83828, conviction for UDII reversed; remanded for resentencing. In Case No. 19CR43394, affirmed.

_____

* O'Connor, Judge *vice* Mooney, Judge.

**HELLMAN, J.**

In this consolidated criminal appeal, defendant appeals a judgment of conviction for unlawful dissemination of an intimate image (UDII), ORS 163.472 (2015), *amended by* Or Laws 2017, ch 318, §11; Or Laws 2019, ch 304, § 1.[1] He raises two assignments of error. Because it is dispositive, we write only to address defendant's first assignment, in which he argues that the trial court erred by failing to acquit him of UDII because the state's evidence was insufficient to establish that defendant disclosed intimate images through an "Internet website," a term that, as of 2019, is no longer in the statute. Using our familiar interpretive framework, *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009), we conclude that the text, context, and legislative history of ORS 163.472 (2015) demonstrate that the legislature intended to criminalize the distribution of intimate images specifically through website platforms, and the state was therefore required to prove that defendant disclosed the images through a World Wide Web page. Based on the proper construction of the statute, we conclude that the state's evidence was insufficient, and accordingly, we reverse the conviction for UDII and remand for resentencing on the harassment conviction.

When a challenge to the legal sufficiency of the state's evidence depends upon the meaning of the statute defining the offense, we review for legal error. *State v. Holsclaw*, 286 Or App 790, 792, 401 P3d 262, *rev den*, 362 Or 175 (2017). "Then, based on the proper construction of the statute, we view the evidence in the light most favorable to the state to determine whether a rational factfinder could have found the elements of the offense beyond a reasonable doubt." *Id.* We state the relevant facts in accordance with our standard of review.

In 2017, defendant and S briefly dated. After the relationship ended, S's ex-husband, F, received multiple images and a video that depicted S partially clothed or nude lying in a bed. Defendant was subsequently charged with UDII under

---

[1] In Case No. 17CR83828, defendant was convicted of UDII and harassment, ORS 166.065. In Case No. 19CR43394, defendant pleaded guilty to failure to appear in the second degree, ORS 162.195. On appeal, defendant does not challenge either the harassment conviction in Case No. 17CR83828, or the judgment in Case No. 19CR43394.

ORS 163.472 (2015), which prohibits the disclosure of intimate images "through an Internet website." At the bench trial, F testified that he received the images on his phone "[t]hrough Facebook Messenger." On cross-examination, defendant asked whether F received the images on a computer or internet browser, to which F responded, "It was on my phone." F also testified that Facebook Messenger is "a part of Facebook" and that access to Facebook requires access to the internet. The state introduced screenshots of F's phone, which showed the intimate images contained within a chat interface. The screenshots did not display a uniform resource locator (URL) or browser.[2] A police officer testified that defendant admitted that he sent the images "via Facebook Messenger." The officer further testified that Facebook Messenger is "accessed by the internet" and that "Facebook" has a "URL link."

In his closing argument, defendant argued that the state failed to prove that Facebook Messenger was an "Internet website" within the meaning of ORS 163.472 (2015) because "[i]t is an application that uses web-based services * * * to help people communicate" but it was "not an internet website that you can navigate to a URL for a message."[3] The trial court found defendant guilty, explaining that, with respect to the internet website element, "I get to rely on my own common sense and experience—I know that Facebook is on the internet. And I also know that Facebook Messenger is part of Facebook[.]"

On appeal, defendant reprises his argument, arguing that, based on the text, context, and the legislative

---

[2] A browser is a program that allows a user to navigate the World Wide Web and a URL refers to a web page's location within the World Wide Web. *See Merriam-Webster Unabridged Dictionary*, https://unabridged.merriam-webster.com/unabridged /browser (accessed Sept 29, 2025) (defining "browser" as "a computer program used for accessing sites or information on a network (such as the World Wide Web)"); *id.*, https://unabridged.merriam-webster.com/unabridged/URL (accessed Sept 29, 2025) (defining "URL" as "the address of a resource (such as a document, program, or website) on the Internet that consists of a communications protocol followed by the name or address of a computer on the network and that often includes a location (such as a directory name) on the computer and an identification (as by a file name)").

[3] In a bench trial, so long as a defendant clearly challenges the sufficiency of the state's evidence during closing argument, the defendant is not required to expressly move for a judgment of acquittal in order to preserve their argument for appeal. *See State v. Forrester*, 203 Or App 151, 155, 125 P3d 47 (2005), *rev den*, 341 Or 141 (2006).

history of ORS 163.472 (2015), the legislature intended the term "Internet website" to mean "a hypertext document accessible on the World Wide Web through a web browser." In defendant's view, the state failed to prove that defendant's communications to the ex-husband were accessible through a web browser. The state agrees with defendant's proposed construction of the term "Internet website" but argues that the evidence was sufficient to establish that Facebook Messenger could be accessed via a web browser.

When interpreting the meaning of a statutory provision, our task is to discern the intent of the legislature. *Gaines*, 346 Or at 171. In doing so, we examine the statutory text, in context, along with any legislative history that is helpful to our analysis. *Id.* at 171-72. The UDII statute in effect at the time of the alleged crime provided, in relevant part:

> "(1)   A person commits the crime of unlawful dissemination of an intimate image if:
>
> "(a)   The person, with the intent to harass, humiliate or injure another person, knowingly causes to be *disclosed through an Internet website* an identifiable image of the other person whose intimate parts are visible or who is engaged in sexual conduct;
>
> "(b)   The person knows or reasonably should have known that the other person does not consent to the disclosure;
>
> "(c)   The other person is harassed, humiliated or injured by the disclosure; and
>
> "(d)   A reasonable person would be harassed, humiliated or injured by the disclosure."

ORS 163.472 (2015) (emphasis added).

We begin by considering the text of the statute. Because the legislature did not define the term "Internet website," we assume that the term has its "plain, natural, and ordinary" meaning, and in doing so, "we often consult dictionaries for guidance in determining what the legislature would have understood a term to mean." *State v. Meiser*, 372 Or 438, 462, 551 P3d 349 (2024) (internal quotation marks omitted). The "Internet" refers to "an electronic

communications network that connects computer networks and organizational computer facilities around the world." *Merriam-Webster Unabridged Dictionary*, https://unabridged. merriam-webster.com/unabridged/Internet (accessed Sept 19, 2025). A "website" is "a group of World Wide Web pages usually containing hyperlinks to each other and made available online by an individual, company, educational institution, government, or organization." *Id.*, https://unabridged. merriam-webster.com/unabridged/website (accessed Sept 19, 2025). Thus, a plain reading of the statutory text demonstrates that an "Internet website" is, simply, a grouping of World Wide Web pages accessible through an electronic communications network.

That definition does not broadly encompass all forms of electronic communication. Instead, it refers to communications that occur via a specific platform—the World Wide Web. By contrast, other criminal statutes in effect in 2015 targeted a broader swath of electronic communication. For example, for purposes of the online sexual corruption of a child statute, the legislature defined "online communication" as a communication "that occurs via telephone text messaging, electronic mail, personal or instant messaging, chat rooms, bulletin boards or any other transmission of information by wire, radio, optical cable, cellular system, electromagnetic system or other similar means." ORS 163.431; *see also* ORS 166.065 (2013), *amended by* Or Laws 2017, ch 430, § 1, Or Laws 2019, ch 304, § 3, Or Laws 2022, ch 114, § 2 (defining "electronic threat" for purposes of the crime of harassment as "a threat conveyed by electronic mail, the Internet, a telephone text message or any other transmission of information by wire, radio, optical cable, cellular system, electromagnetic system or other similar means"). Those statutory definitions demonstrate that the legislature knew how to craft a more comprehensive definition of electronic communication that covered various technologies. It thus provides contextual support for our conclusion that the legislature intended "Internet website" to refer to a subset of electronic communication: specifically, World Wide Web pages. *See State v. Giron-Cortez*, 372 Or 729, 737, 557 P3d 505 (2024) ("A statute's context includes other provisions of the same or related statutes.").

Finally, the pertinent legislative history further confirms that the legislature intended the UDII statutory scheme to prohibit the distribution of intimate images on World Wide Web pages and that it did not consider phone-based applications to be "Internet websites." At a hearing before the Senate Judiciary Committee, proponents of the bill explained that, in recent years, what is commonly referred to as "revenge porn" had "exploded" on "websites * * * dedicated exclusively to hosting revenge porn" as well as on "social media sites," including Facebook. Audio Recording, Senate Committee on Judiciary, SB 188, Feb 10, 2015, at 0:01:45, 0:02:50-0:03:07, 0:10:10 (comments of Aaron Knott, Legislative Director of the Oregon Department of Justice), https://olis.oregonlegislature.gov (accessed Sept 18, 2025). The images were typically published alongside victims' identifying information, such as the individual's name, contact information, and employer. *Id.* at 0:03:08-0:03:53. As a consequence, victims were exposed "to harassment by anybody who sees these pictures over the internet," and the images were likely to appear in future "google search[es]" for that individual. *Id.* That history establishes that, in enacting the UDII scheme, the legislature specifically targeted website platforms that were broadly accessible to the public. To accomplish that, the legislature focused narrowly on disclosures occurring through World Wide Web pages, as opposed to text messaging or phone-based applications.[4]

---

[4] In 2019, the legislature amended the UDII statute to remove "Internet website" from the statutory language. Or Laws 2019, ch 304, § 1. As defendant emphasizes, the 2019 legislative history of that amendment suggests that the legislature removed that element to account for the rise in telephone-based communication:

> "[I]n 2015, distribution in fact did happen by internet websites. Since then, it's moved to telephonic digital distribution, and our statutory language is at best an ambiguous fit. And so it is the consensus of the workgroup that we stop trying to presuppose where this technology for distribution will go next and instead just focus on the fact that the distribution happened at all, rather than how."

Audio Recording, House Committee on Judiciary, HB 2393, Feb 20, 2019, at 0:44:08-0:44:34 (comments of Aaron Knott, Legislative Director of the Oregon Department of Justice), https://olis.oregonlegislature.gov (accessed Sept 18, 2025).

Although subsequent legislative history may be "informative," it is "not determinative as to the intent of the legislature that enacted" the disputed statutory language, and accordingly, we do not rely on it here. *State v. Parra-Sanchez*, 324 Or App 712, 724, 527 P3d 1008, *rev den*, 371 Or 333 (2023); *see also State v.*

In sum, under ORS 163.472 (2015), the state must prove that a criminal defendant distributed intimate images through a specific platform, an "Internet website," which refers to a grouping of World Wide Web pages accessible through an electronic communications network. Importantly, that definition does not broadly encompass all forms of digital communication, and therefore, does not extend to telephone-based communication. Rather, in 2015, the legislature more narrowly criminalized the use of a specific technology, a website, to distribute intimate images.

With that understanding of the statute, we conclude that the state's evidence was insufficient to prove that defendant disclosed the intimate images through an "Internet website" within the meaning of ORS 163.472 (2015). In the light most favorable to the state, the evidence established that F received the images through Facebook Messenger "on [his] phone." But evidence as to how F *received* the images does not necessarily establish whether defendant *disclosed* the images through an internet website, as required under the statute. Although defendant admitted that he sent the images through Facebook Messenger, the state did not introduce any evidence from which a trier of fact could conclude that Facebook Messenger was an internet website. The state did not introduce evidence to define either Facebook or Facebook Messenger. At most, the evidence demonstrated that Facebook Messenger is not synonymous with Facebook; rather, it is a "part of Facebook." That testimony suggests that there is some distinction between Facebook and Facebook Messenger but does not otherwise describe the relationship between the two. Although the officer testified that Facebook was accessible via a URL, the state did not elicit similar testimony about Facebook Messenger. Because Facebook and Facebook Messenger are not interchangeable, testimony about the ability to access Facebook via a URL was insufficient to establish that fact as to Facebook Messenger.

The state did not introduce any other evidence to establish that communications between F and defendant through Facebook Messenger were accessible via a URL.

*Cloutier*, 351 Or 68, 103-04, 261 P3d 1234 (2011) ("This court has stated that subsequent legislative history is irrelevant, although, on other occasions, the court has been less categorically dismissive." (Citations omitted.)).

Indeed, the state's own evidence suggested that they were not. The state's exhibit depicting the messages did not display a URL or browser, tools that are necessary for a user to access a website platform. To be sure, the testimony at trial established that sending a message via Facebook Messenger requires internet access. However, internet access by itself does not establish that the disclosure of images occurred through a website, which is the specific platform identified by the legislature for criminal liability under ORS 163.472 (2015).

Because the state failed to carry its burden to prove that defendant disclosed the images through an internet website, the trial court erred in denying defendant's motion to dismiss the UDII charge.

In Case No. 17CR83828, conviction for UDII reversed; remanded for resentencing. In Case No. 19CR43394, affirmed.